Bank of Deer Lodge, appellant, *v.* Hope Mining Company, respondent.

Principal and agent — *agent authorized to draw bill of exchange in his name cannot draw in name of principal.* The president of the Hope Mining Company sent the following telegram from St Louis, Mo., February 23, 1874 ; " To Joseph Alger, Philipsburg. Care for company's property. See that McArdle has what he needs. If funds needed, draw on company. Chas. C. Whittlesey." McArdle died before the message was delivered. A bill of exchange for $500 was drawn March 26, 1874, and signed " Hope Mining Co. by Jos. M. Alger," which was discounted by the First National Bank of Deer Lodge and paid by the company. A similar bill for $1,000 was drawn May 18, 1874, and discounted by the bank, which was not paid by the company, and the bank brought this action thereon. The officers of the bank made no inquiries relating to the authority of Alger and did not see the telegram. From March 26, 1874, to about May 18, 1874, Alger checked against certain money of the company which was deposited in Deer Lodge and Helena, in this Territory. *Held*, that the telegram authorized Alger to draw on the company in his own name for money for a particular purpose, and that it did not author-

ize him to sign the name of the company to the bills. *Held, also,* that the payment of the checks and the first bill by the company did not estop the company from disputing the right of Alger to draw the second bill. *Held, also,* that the bill in controversy can be treated by the holder, as an accepted bill or a promissory note, that Alger had no authority to make such an instrument, and that the company was not bound to pay the same.

CASE AFFIRMED. The case of *Herbert* v. *King,* 1 Mon. 475, holding that the principal is responsible for the acts of his agent while acting within the scope of his authority, and that courts will not enlarge this liability, affirmed.

### *Appeal from Second District, Deer Lodge County.*

THIS action was tried by the court, KNOWLES, J., without a jury.

SHARP & NAPTON, for appellant.

The telegram constituted Alger an agent of the respondent and authorized him to draw the draft in suit. If respondent authorized the drawing of the draft by Alger, or authorized appellant, as a fair and reasonable party, to believe that the authority had been given, it is bound by the acts of the party acting as agent. 1 Pars. on Notes and Bills, 100, 101; Chitty on Bills, * 30, * 31.

The drawing of one draft, directed and signed like the one in suit, which was accepted and paid by respondent, coupled with the fact that Alger was authorized to check and did check against the funds of respondent in Deer Lodge and Helena, was sufficient to authorize appellant, as a reasonable party, to believe he had authority to draw the draft in suit, and to show the manner of exercising this authority. Under certain circumstances, authority to bind the principal in one form might be evidence throwing light on the question of authority to bind him in another. 1 Dan. on Neg. Inst. 218, 219.

It is not necessary that appellant should have seen the authority before the money was paid on the draft. If the agent had the authority, that is sufficient. Bateman on Com. Law, §§ 498, 500.

The evidence shows that Alger drew the draft by virtue of his agency for respondent and the telegram. There is no evidence that Alger had any private funds in respondent's hands.

W. W. Dixon, for respondent.

A party dealing with an agent is bound at his peril to know what the power of the agent is, and if the agent exceeds his power the principal is not bound. 1 Pars. on Notes and Bills, 119; *Blum* v. *Robertson,* 24 Cal. 140; *Herbert* v. *King.* 1 Mon. 475; Story on Agency, §§ 165, 169.

The acts of an agent in making negotiable paper for his principal are restrained. 1 Pars. on Notes and Bills, 107; Story on Agency, § 59. An authority to make such paper cannot be inferred from one or two instances of recognition. 1 Pars. on Notes and Bills, 100.

The telegram was the only authority for Alger to act. This was not addressed to him as agent and did not make him such. Alger was authorized in a certain contingency to draw in his own name on respondent, but he could not draw in the name of respondent.

The instrument that Alger drew was a promissory note in law. 2 Greenl. Ev., § 160; 1 Pars. on Notes and Bills, 62. The drawing in this case was an acceptance and no presentment for acceptance or notice of non-payment is necessary. 1 Pars. on Notes and Bills, 281, 521.

Alger departed from his authority in a substantial particular and respondent is not bound.

Blake, J. The appellant brings this action to recover upon the following bill of exchange:

" $1,000.00.          Deer Lodge, M. T., *May 18th,* 1874.

At sight, pay to the order of the First National Bank, Deer Lodge, one thousand dollars. Value received, and charge the same to account of

HOPE MINING CO.

To Chas. C. Whittlesey, Prest.          By Jos. M Alger.
  Hope Mining Co.,    { Stamp. }
    St. Louis, Mo."

Indorsement — " Pay the Security Bank, or order, for collection, account of First National Bank, Deer Lodge, Montana.

W. A. CLARK, *President.*"

The appellant has been incorporated under the laws of the United States and is engaged in a general banking business. It discounted the bill upon its date and paid the proceeds to Alger. The respondent has been incorporated under the laws of the State of Missouri and is mining some quartz lodes at Philipsburg and has an office in St. Louis, Missouri. The appellant demanded payment of the bill at the office in St. Louis, May 27, 1874, and the respondent refused to accept or pay the same. Notice of its presentment and non-payment was properly given.

The respondent denied that Alger was its agent and claimed that he had no authority to draw the bill. The court below rendered judgment for the respondent upon these grounds, and also found that it was the custom of the respondent in drawing drafts upon itself to direct them to Chas. C. Whittlesey, president of the Hope Mining Company. The only authority of Alger to draw the bill is contained in the following telegram, which was transmitted by the Western Union Telegraph Company.

"Dated ST. LOUIS, *Feb.* 23*d*, 1874.

Received at ———.

To JOSEPH ALGER, Philipsburg:

Care for company's property. See that McArdle has what he needs. If funds needed, draw on company.

CHAS. C. WHITTLESEY."

This telegram was received by Alger about February 25, 1874, after the death of McArdle. One bill of exchange for $500 was drawn by Alger, March 26, 1874, which was dis- counted by the appellant, and afterward accepted and paid by the respondent. The proceeds were expended for the benefit of the respondent. This bill was signed in the same manner as that involved in this action, and all the parties were the same. No other bills were drawn on the respondent by Alger, but dur- ing the months of February, March and April, 1874, Alger checked against some funds of the respondent in Deer Lodge and Helena. Alger was not in the employ of the respondent when the second bill was drawn, and the proceeds were used in defray- ing the expenses of Mrs. McArdle and her family from Philips-

burg to St. Louis. The officers of the appellant did not make any inquiries respecting the authority of Alger to sign these bills, or the purposes for which they were drawn, and never saw the telegram.

We must consider the relations of Alger and the respondent which affect the rights of the appellant. It is evident that the telegram authorized Alger to draw upon the respondent for money for certain objects. Did it constitute Alger the agent of the respondent, and empower him to sign the bill in that capacity? Did the officers of the respondent authorize those of the appellant, with whom Alger dealt, to believe as fair and reasonable men that this authority had been actually given to Alger? An examination of the law of Agency will enable us to determine these questions, and if we find that either of them should be answered in the affirmative, we must decide that the respondent was bound by the acts of Alger. 1 Pars. on Notes and Bills, 100, 101, and cases there cited.

Some of the principles, which are applicable to these questions, have been announced by this court in the case of *Herbert* v. *King,* 1 Mon. 475. It was held that the principal is responsible for the acts of his agent, when they have been done within the scope of his authority, and that "courts will not tolerate any enlargement of this liability." The bill shows that Alger claimed to be the agent of the respondent, and it was the duty of the officers of the appellant to ascertain the extent of his power before they discounted it. In *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.,* 3 N. Y. 631, Mr. Justice COMSTOCK says: "Whoever proposes to deal with a security of any kind, appearing on its face to be given by one man for another, is bound to inquire whether it has been given by due authority, and if he omits that inquiry, he deals at his peril." *Blum* v. *Robertson,* 24 Cal. 140 and cases there cited. In this action, the burden of proving that Alger was the agent of the respondent in drawing the bill is on the appellant. Add. on Cont., § 57. The power of an agent to make the principal a party to negotiable paper is always restricted by the courts. "So carefully is this authority watched, that, where power is given to do some things with regard to promissory notes or bills,

it cannot be enlarged by construction to do other, though somewhat similar, things." 1 Pars. on Notes and Bills, 107.

This doctrine may be illustrated by the following authorities. An agent who is authorized to draw and indorse bills of exchange in the name of his principal has no power to draw or indorse the bills in his own name, or in the joint name of himself and his principal. *Stainback* v. *Read*, 11 Gratt. 281. The agent of a corporation who was authorized to borrow money from a bank and execute the note of the corporation therefor could not bind his principal by borrowing the money and executing a bond for the same under the seal of the corporation. *Little Rock* v. *State Bank*, 3 Ark. 227; Story on Agency (7th ed.), § 165. An authority to draw is not an authority to indorse or accept bills. 1 Pars. on Notes and Bills, 107, and cases there cited. In *Tute* v. *Evans*, 7 Mo. 419, the agent was authorized November 28, 1839, to draw a bill of exchange "at four months' date," and the bill was actually drawn December 23, 1839, and ante-dated November 28, 1839, and payable "four months after date." The court held that the bill was not in conformity to the authority conferred on the drawer and that the principal was not bound.

The authority of Alger to draw checks on the money of the respondent in this Territory is wholly distinct from that of drawing a bill of exchange on the respondent in Missouri. The power to exercise one of these acts does not include the other, and the fact that Alger checked against the funds of the respondent during the time which has been mentioned does not tend to prove that he had the authority to draw the bill in controversy.

The appellant maintains that the facts which have been referred to would authorize the officers of the appellant, as fair and reasonable men, in believing that Alger had the right to draw the bill. In other words, the argument is that the respondent is estopped from disputing that Alger had the authority he exercised respecting the bill. The officers of the appellant made no effort to ascertain the power of Alger, and appear to have assumed that the payment of the first bill by the respondent was a sufficient recognition of the authority of Alger, in drawing the second bill. If Alger had repeatedly performed acts like the one in dispute,

which had been ratified by the respondent, the officers of the appellant could presume that he was authorized to draw the bill. But this conclusion could not be inferred from one instance of such recognition. The legal effect of the ratification of an un-authorized act is equivalent to the previous delegation of author-ity to do the act. This ratification, however, does not operate as presumptive evidence of original authority, but as a confirmation *per se* of the unauthorized act. *Commercial Bank* v. *Warren*, 15 N. Y. 577. In *Cook* v. *Baldwin*, 120 Mass. 317, the court held that the part payment by the drawee of a bill of exchange is not such a recognition of his obligation as will, as matter of law, bind him to pay the remainder.

We are now brought to the consideration of the telegram from Whittlesey to Alger, and the rights of the parties to the action must depend upon its interpretation. What is the character of the instrument which Alger signed? It is a bill drawn by the agent of a corporation upon itself and may be treated as an accepted bill or a promissory note, at the election of the holder. 1 Pars. on Notes and Bills, 62, 288, and cases there cited; 2 Greenl. Ev., § 160, and cases there cited. Alger had no authority to make such a bill or note; he was a special agent, and his power was accurately limited. The telegram did not describe or rec-ognize Alger as an agent of the respondent, but authorized him to draw in his own name on the respondent, if money was needed for a particular purpose. It is not necessary for us to pursue this inquiry into the effect of the acts of Alger on the rights of all the parties to the bill. Alger violated his instructions and the respondent is not bound by his action in drawing the bill.

The purchaser of the bill should have exercised prudence and examined the telegram to see whether it justified the act of Alger. " And if, from his omission to call for or to examine the instru-ment, he should encounter a loss from the defective authority of the agent, it is properly attributable to his own fault, since he must know that he has no other security than his reliance upon the good faith and credit of the agent." Story on Agency (7th ed.), § 72, and cases there cited. The judgment is affirmed.

*Judgment affirmed.*