FIRST NATIONAL BANK OF BILLINGS, RESPONDENT,
*v.* T. W. HALL AND COMPANY, APPELLANTS.

AGENCY—*Revocation of authority—Dealing with agent.*—The plaintiff sued on a draft, alleged to have been drawn by one Camp, as their agent, on the defendants. The answer denied the authority of Camp to draw the draft. It appeared from the evidence that Camp had been acting as the agent of the defendants in soliciting consignments of wool; that upon one occasion, by and with the consent of a member of the defendant firm, who was present at the time, he had made a purchase of some wool, paying for the same with two drafts (discounted by the plaintiff) on the defendants; and that the draft sued upon had been drawn to pay for a particular lot of wool, which he had brought in spite of a telegram received from the defendants, directing him not to purchase the same. The plaintiff's cashier testified that he had made no inquiry as to Camp's authority to draw the draft. The defendants appealed from a judgment on special findings of fact, made by the court, trying the case without a jury, in favor of the plaintiff. *Held,* even on the assumption that Camp had authority to purchase wool and draw drafts on the defendants, such authority was revoked as to the particular transaction in controversy by the telegram he had received; *also,* that the plaintiff had no right to rely upon Camp's being authorized to draw the draft, from the fact of his having only once before exercised a similar authority (*Bank of Deer Lodge* v. *Hope Min. Co.* 3 Mont. 146; 35 Am. Rep. 458, cited); and that the findings of fact and judgment of the lower court were erroneous. (*Ingalls* v. *Austin, ante,* p. 333, distinguished.)

*Appeal from the Third Judicial District, Yellowstone County.*

The opinion states the facts.

*E. N. Harwood,* for Appellants.

The appellants contend that Camp had no authority to buy wool for them, or to bind them on drafts. On a single transaction, as appears in the evidence, remote in its relation to T. W. Hall & Co., the respondent—First National Bank—seeks to hang the proposition that it was justified, as a reasonable party, in cashing drafts drawn by E. B. Camp on Hall & Co. *ad libitum,* without any inquiry as to Camp's authority. But had the one instance been a direct act of E. B. Camp, signing himself as agent of T. W. Hall & Co., then in law the bank "would not be warranted in drawing the conclusion from one or two instances of such recognition." (1 Parson on Notes and Bills, 100; *Bank of Deer Lodge* v. *Hope Mining Co.* 3 Mont. 146; 35 Am. Rep. 458, and cases cited.) The plaintiff nowhere asserts that E. B. Camp was authorized to draw drafts in appellants' name. Surely, if Camp had authority to draw a draft,

and bind T. W. Hall & Co. thereon, such authority must have been derived as incidental to his authority to buy wool. Authority to do one thing does not authorize the doing of another. "The power of an agent to make the principal a party to negotiable paper is always restricted by the courts." (*Herbert* v. *King*, 1 Mont. 475; *Bank of Deer Lodge* v. *Hope Mining Co.* 3 Mont. 146; 35 Am. Rep. 458; 1 Parson on Notes and Bills, 107, 118, 119 *n.*) In *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.* 13 N. Y. 631, Justice Comstock says: "Whoever proposes to deal with a security of any kind, appearing on its face to be given by one man for another, is bound to inquire whether it has been given by due authority, and if he omits that inquiry he deals at his peril." This authority is quoted and approved in *Bank of Deer Lodge* v. *Hope Mining Co.* 3 Mont. 146; 35 Am. Rep. 148. (See cases there cited.)

*Andrew F. Burleigh,* for Respondent.

For the purpose of executing a bill of exchange it is not necessary that the agent's authority should be given in any particular form. It may be verbal. (Randolph on Comm. Paper, § 353, p. 499.) The authority of an agent need not be expressly conferred on him, but may be implied from his conduct, coupled with that of his principal. If the authority has been conferred by parol it may be proved by the testimony of the agent, as well as by that of any other witness. (1 Randolph on Comm. Paper, § 362, pp. 507, 508.)

DE WOLFE, J.—The First National Bank of Billings brought its action against the defendants on a certain draft drawn by E. B. Camp, as agent of defendants, for the sum of $4,355.27, payable to plaintiff, and dated August 9, 1886, on which the complaint alleged a balance due of $790.19, for which sum plaintiff asked judgment. The answer denied the liability of defendants on the draft, and denied the right or authority of said Camp to draw the same as agent of defendants, or otherwise. The cause was by consent tried by the court without a jury. After hearing the evidence the court filed certain written findings of fact in favor of the plaintiff, and thereupon rendered judgment in favor of the plaintiff for the sum of $866.47, and the

costs of the suit. A motion for a new trial was made and over-ruled. To review these proceedings this appeal is brought. The evidence introduced was conflicting in some respects, but the following facts were testified to by witnesses, both for plaintiff and defendants, and were not contradicted: During the year 1885, and up to July 9, 1886, the firm of E. B. Camp and Brother, doing business in Billings, Montana, acted as agents of T. W. Hall & Co., the defendants, in soliciting consignments of wool to be shipped for sale on commission to the city of Chicago, where that firm was engaged in business as commission merchants. In the month of July, 1886, T. W. Hall came to Billings, and while there E. B. Camp, at his request or by his advice, bought a lot of wool of Reynolds and Gould, which, by an understanding between T. W. Hall, acting for T. W. Hall & Co., and E. B. Camp, was consigned for sale to T. W. Hall & Co., to be sold for joint account of that firm and E. B. Camp; and by a like understanding, the wool so bought was paid for by two drafts drawn by E. B. Camp on T. W. Hall & Co., which drafts were discounted or purchased by the plaintiff herein, the First National Bank of Billings. As far as concerns this transaction the evidence is uncontradicted; but from this point forward, the statements of the two principal witnesses, E. B. Camp and T. W. Hall, conflict.

E. B. Camp testifies that when Hall was about leaving for home, he requested him, if he could find any other clip similar to the lot of wool bought, to take it on the same terms; and also said to him, "I want you to buy wool for me, and want you to act for me." This was about the 2d of August, 1886. Further on, and on cross-examination, he stated that Hall also said to him before he left, that he (Hall) would probably be out in a year, "and would want me to buy wool and work for him; he told me to use my own judgment, but said nothing about the price." (Record, p. 20.)

Hall, on the other hand, testified that the arrangements made by his firm with Camp Brothers were, that the latter firm was to receive twenty-five cents per sack for wool consigned to T. W. Hall & Co., and one quarter of one cent per pound out of the commissions on all wool consigned by them; that no change was made from this after the 9th of August, 1886, but the same

understanding and agreement was continued with E. B. Camp after that time, as before existed with the firm of Camp and Brother; that it was distinctly understood that the firm of Hall and Company were not purchasers of wool, but commission merchants for its sale only; that circular letters were sent out by the firm to different wool men, by which they were authorized to draw upon consignments of wool for two thirds or three fourths of its value; and this was the only authority given to Camp or any one else to draw on their firm; and further, that he never authorized Camp to purchase the wool hereafter mentioned, or any other wool. In this condition of affairs, Camp, on the 9th of August, 1886, entered into negotiations for the purchase of a lot of wool from Jennison Brothers; but before buying, sent a telegram to T. W. Hall and Company, as follows:—

*T. W. Hall and Company.*
Jennison clip, eighteen thousand, go Boston; can buy for twenty-four and a half; same quality as Reynolds and Gould; give your opinion quick.

    (Signed)                    E. B. CAMP.

To which Hall and Company on the same day replied as follows:—

*E. B. Camp, Billings, M. T.*
No money in it; better let it go to Boston.
    (Signed)               T. W. HALL & CO.

Assuming that Camp's testimony as to the power to purchase wool for T. W. Hall & Co. is correct, here was a countermand or revocation of that authority as to the lot of wool to which these telegrams relate; it can be construed in no other sense; but Camp, notwithstanding this telegram, proceeded to buy the wool at a less rate, paying twenty-three and three fourth cents per pound therefor, and drew, as the agent of T. W. Hall & Co., the draft in controversy in this action in payment therefor. The draft was presented for payment, and protested on account of non-payment. A correspondence subsequently ensued between the plaintiff and defendants in regard to this wool, and an arrangement was entered into between them by which defendants advanced twenty-two cents per pound on the

wool, and thereafter sold the same and accounted to the plaintiff for the proceeds, charging a commission for their services. The difference between the sum realized from the sale of the wool and the amount of the draft is the sum sued for in this action. We mention this as a part of the history of this case, as shown by the record, and not as affecting the rights of the parties in this action. Their rights were fixed, and must be determined at the time the draft was drawn by Camp, and discounted by the plaintiff. If Camp had authority at that time to draw the draft, the liability of defendants to pay the same was clearly established; if he had not authority, they were not liable. Viewing the evidence in the light most favorable to the plaintiff, and in support of the findings and judgment of the court, we are forced to the conclusion that there was not sufficient evidence to justify the findings of fact and the judgment predicated thereon. Whatever authority T. W. Hall gave to Camp to buy wool for his firm at the time he was in Billings, we think the authority to buy, and as a consequence to draw the draft in question, was revoked by the telegram sent to him on the 9th of August advising and instructing him not to buy; and in the light of that telegram Camp was not the agent of the defendants for the purchase of the wool mentioned. But it may be said that defendants were still bound by the draft drawn by Camp, if done in pursuance of his authority, if plaintiff had no notice of the contents of the telegram sent directing him not to buy. This proposition is clearly correct if Camp, in drawing said draft, acted in the line of his agency, as previously exercised by him, or ratified by the defendants; but the only other instance in which he had exercised a similar authority was when T. W. Hall was present in Billings, and when a single lot of wool was bought by Camp on joint account with the firm of T. W. Hall and Company. H. H. Mund, cashier of plaintiff, states in his evidence: "I did not make any inquiry about Camp's authority to draw the draft; I did not question it at all."

In the case of *Bank of Deer Lodge* v. *Hope Mining Company*, the facts were somewhat similar to those in this case; and the court, speaking on the right of one Alger to draw the draft in controversy in that case, as an agent of the Hope Mining Com-

pany, says: The appellant maintains that the facts which have been referred to would authorize the officers of the appellant, as fair and reasonable men, in believing that Alger had the right to draw the bill. The officers of the appellant made no effort to ascertain the power of Alger, and appear to have assumed that the payment of the first bill by the respondent was a sufficient recognition of his power to draw the second bill. If Alger had repeatedly performed acts like the one in dispute, which had been ratified by the respondent, the officers of appellant could presume that he was authorized to draw the bill; but this conclusion could not be inferred from one instance of such recognition. (3 Mont. 150; referring to *Commercial Bank* v. *Warren*, 15 N. Y. 577, and *Cook* v. *Baldwin*, 120 Mass. 317; 21 Am. Rep. 517, in support of the rule laid down.)

This transaction appears to have been entered into by the bank, without sufficient scrutiny into the authority of Camp. While hardship may sometimes result from such confidence, it is better so than to relax the familiar rule, that an agent cannot bind his principal by acts done without authority; and that other rule that all persons dealing with an agent are bound to ascertain the scope of his authority, or otherwise they act at their peril. (*Blum* v. *Robertson*, 24 Cal. 140, and cases cited.)

The opinion here rendered may appear at variance with the opinion of this court, rendered at the present term, in the case of *Ingalls* v. *Austin, ante,* page 333, in which the court held, that when evidence was contradictory or conflicting, and there was sufficient evidence to support the findings of the court and the judgment, the appellate court would not disturb the findings or the judgment. But we deem the cases unlike; and in this case there was not sufficient evidence to support the findings and conclusions reached by the judge who tried the cause.

The judgment must be reversed, and the cause remanded for a new trial, in conformity with the views expressed in this opinion.

*Judgment reversed.*

McCONNELL, C. J., and LIDDELL, J., concur.