## KIRCHER APPELLANT, *v.* CONRAD ET AL., RESPONDENTS.

PRINCIPAL AND AGENT — *Liability.* — A principal is responsible for the acts of his agent when they have been done within the scope of his authority, and this liability will not be enlarged. (*Herbert* v. *King*, 1 Mont. 475; *Bank of Deer Lodge* v. *Hope Mining Co.* 3 Mont. 146; 35 Am. Rep. 458; *Bank of Billings* v. *Hall*, 8 Mont. 341, cited.)

EXPRESS WARRANTY — *Form.* — No form of words is essential to constitute an express warranty in the sale of chattels.

IMPLIED WARRANTY — *Caveat emptor.* — In sales of personal property on inspection, without express warranty, where the vendor's means of knowledge are no greater than those of the vendee, there is no implied warranty on the part of the vendor that the article sold is of the species contemplated by the parties, and the rule of *caveat emptor* applies.

WARRANTY — *Words held not to constitute a warranty — Power of agent to warrant.* — Plaintiff looked at some wheat in defendants' store, and asked what kind it was, stating that he wanted to buy spring wheat. Defendant and one T., a clerk, said they did not know, but would write and find out. Some months later, plaintiff went into the store and said to T., who was in charge of defendants' business: "How about that wheat, have you an answer yet?" T. said: "We have; it is spring wheat. We have just got a car load of it." Plaintiff said: "Are you sure it is spring wheat?" T. replied: "What do you take me for?" *Held*, that the words used by T. in reply to plaintiff's questions did not constitute a warranty that the grain was spring wheat. *Held, also*, that T. had the power under his employment to make an express warranty of the quality of the grain had plaintiff required it.

*Appeal from Third Judicial District, Custer County.*

The cause was tried before LIDDELL, J. Plaintiff appeals from an order of the court granting defendants' motion for a new trial.

*J. W. Strevell,* and *James H. Garlock,* for Appellant.

The agent, Tompkins, as is admitted by the defendants, and as is shown by the evidence, had full authority to make sales. His contracts of sale made in the course of that business were binding upon them. Where the acts of the agent will bind the principal, representations, declarations, and admissions respecting the subject-matter will also bind the principal if made at the time of the transaction. (Benjamin on Sales, § 624; 1 Greenleaf on Evidence, § 113; 11 Addison on Torts [Wood's ed.], § 1209; *Van Wyck* v. *Allen,* 69 N. Y. 61; 25 Am. Rep. 136; *Ahern* v. *Goodspeed,* 72 N. Y. 108; *Andrews* v. *Kneeland,* 6 Cowen, 354; *Flatt* v. *Osborne,* 33 Minn. 98; *Schuchardt* v. *Allen,* 1 Wall. 369; *Butler* v. *Maples,* 9 Wall. 766.) It is admitted in the pleadings that the defendants and their agent knew before and at the time they sold the wheat to the plaintiff that he was inquiring for spring wheat to be used for seed.

To constitute a warranty under such circumstances no precise form of words is necessary. It is sufficient that the agent of the defendants on finally making the sale represented to the plaintiff that the wheat *was* spring wheat. (Benjamin on Sales, §§ 613, 624; *Thorne* v. *McVeagh,* 75 Ill. 81.)

It is well settled that where the buyer goes to the vendor of an article seeking to purchase an article of a particular kind or quality for a particular purpose, and so informs the vendor, there is a warranty on the part of the vendor that the thing sold is of the kind, and is fit for the purpose for which the buyer requests it. (*Milburn* v. *Belloni,* 39 N. Y. 53; 100 Am. Dec. 403.) In this case the preponderance of the evidence was to the effect that the agent, Tompkins, by express words, represented to the plaintiff that the wheat was spring wheat, and the jury undoubtedly considered that there was an express, and not an implied warranty. It follows that the plaintiff is entitled to recover such damages as were the natural and necessary conse-

quence of the breach of the warranty. (*Passinger* v. *Thorburn,* 34 N. Y. 634; 90 Am. Dec. 753; *Van Wyck* v. *Allen,* 69 N. Y. 61; 25 Am. Rep. 136; *White* v. *Miller,* 71 N. Y. 118; 27 Am. Rep. 13.) When the defendants put their clerk in the place of salesman in their store, they held him out to the public as having a right to say for them what kind of goods they were offering for sale, and they could not avoid or limit their responsibility for are presentation and warranty so made by showing that they had privately instructed him not to make the representation. (Mechem on Agency, §§ 279, 282; Benjamin on Sales, § 626; *Sandford* v. *Handy,* 23 Wend. 260.) Where the evidence is conflicting, the verdict of the jury should not be set aside and a new trial granted where there is no evidence to support the verdict. (*Kile* v. *Tubbs,* 32 Cal. 333; *Iburg* v. *Saunet,* 47 Cal. 265; *Kimball* v. *Gearhart,* 12 Cal. 27.)

*George F. Shelton,* and *A. C. Botkin,* for Respondents.

The grounds upon which the court granted the motion do not appear in the order, and an examination of the transcript shows that there was a conflict of testimony upon the issues in controversy. It would be sufficient to rest the case upon this proposition alone. (*Chauvin* v. *Valiton,* 7 Mont. 581.) The plaintiff, if he were to recover at all, must recover upon a specific warranty that the wheat in question was spring wheat and such as would grow. There was no warranty of the character or quality of the wheat in question by the defendants. If this was a sale by sample, then the only warranty that could be implied from the language used, was the warranty that the bulk corresponded with the sample. (Benjamin on Sales, § 650; *Carter* v. *Crick,* 4 Hurl. & N. 412; *Gachet* v. *Warren,* 72 Ala. 288.) There is no question in this case but that the bulk corresponded with the sample. The car load from which the wheat was taken was personally inspected and examined by the purchaser, and therefore no warranty of its quality or fitness for a particular use will be implied. (Benjamin on Sales, § 661, n. *u*; *Lord* v. *Grow,* 39 Pa. St. 88; 80 Am. Dec. 504; *Deming* v. *Foster,* 42 N. H. 165; *Shisler* v. *Baxter,* 109 Pa. St. 443; 58 Am. Rep. 738; *Lindley* v. *Hunt,* 22 Fed. Rep. 738; *Reynolds* v. *Palmer,* 21

Fed. Rep. 433, 439; *Salem India Rubber Co.* v. *Adams*, 23 Pick. 256; *Moore* v. *McKinlay*, 5 Cal. 471; *Byrne* v. *Jansen*, 50 Cal. 624.)

If this transaction did not constitute a sale with warranty, as it manifestly did not, it was the sale of an article of a particular description, in which there is shown to be no greater or superior knowledge on the part of the defendants. The general rule is: When an article is sold upon an executory contract, like the one in question, that the delivery and acceptance of the article, after an examination, or an opportunity to examine, is a consent or agreement that the article corresponds with the contract and precludes a recovery for any difference which may exist. The vendee must immediately rescind and return, or offer to return, the goods. He cannot retain the property and afterwards claim damages by action or recoupment for inferior quality. Such a transaction differs from a sale with warranty in that the stipulated quality is a part of the contract itself and not collateral to it, and the rule of *caveat emptor* applies. (*Dutchess Co.* v. *Harding*, 49 N. Y. 321; *Reed* v. *Randall*, 29 N. Y. 368; 86 Am. Dec. 305; *Hargous* v. *Stone*, 5 N. Y. 73; *Dounce* v. *Dow*, 64 N. Y. 411; *Salem India Rubber Co.* v. *Adams*, 23 Pick. 256; *The Gaylord Manuf. Co.* v. *Allen*, 53 N. Y. 515.) There is no evidence to show that the clerk who sold the wheat to plaintiff had any authority to warrant the quality or character of the same. An agent employed to sell has no implied power to warrant unless the sale is one that is usually attended with a warranty. (*Pickert* v. *Marston*, 68 Wis. 465; 60 Am. Rep. 877.) The burden of proving the authority of the agent rests upon the plaintiff. (*Upton* v. *Suffolk County Mills*, 11 Cush. 586; 59 Am. Dec. 163; *Smith* v. *Tracy*, 36 N. Y. 82; *Herring* v. *Skaggs*, 62 Ala. 180; 34 Am. Rep. 4.)

BLAKE, C. J. — This is an appeal from the order of the court below, in granting the motion of the respondents (who were the defendants in the action), for a new trial. The questions to be investigated may be readily understood by stating the substance of the pleadings.

The complaint alleges that the defendants were merchants in 1887, and that plaintiff purchased, through their "duly-author-

ized agents and clerks," eighty-one bushels of wheat, to be used by him in the spring of 1887 for seed; that he informed the agents of the defendants that he desired the wheat to be spring wheat for seed, to be sown that year; that defendants, by their agents, sold and delivered said wheat to plaintiff, and represented and warranted the same to be spring wheat, and fit to be used for sowing in the spring of 1887; that defendants charged plaintiff therefor eighty-five dollars, which plaintiff agreed to pay; that plaintiff believed the representation of the defendants, that said grain was spring wheat, to be true, and sowed the same in the spring of 1887; that said wheat was not spring, but winter, wheat, and therefore failed to produce any crop; and that plaintiff lost his entire crop of wheat for the season of 1887, and his labor in putting said seed into the ground, and was damaged in the sum of one thousand five hundred and eighty-five dollars.

The answer denies that plaintiff purchased any seed wheat, and alleges that he bought a quantity of wheat which was kept and sold as " chicken feed," and that plaintiff was informed of the character and quality thereof at the times alleged in the complaint; denies that the agents or clerks of the defendants represented or warranted to plaintiff that said wheat was spring wheat, and says that the clerks and agents of defendants told plaintiff that they did not know whether the grain was spring or winter wheat; denies that the agents or clerks of defendants made any representations to plaintiff by which plaintiff was misled or deceived as to the kind or character of said wheat; alleges that said clerks and agents told plaintiff, at the time and before he bought the wheat, that they did not know whether it was winter or spring wheat, and that defendants had bought and sold said wheat for feed, and no other purpose, and defendants could not warrant the wheat in any manner as suitable for seed; and denies that plaintiff was misled, or deceived, or damaged by any representations of the clerks or agents of defendants.

The replication denies the averments of the answer.

The testimony at the trial tended generally to prove the allegations of the respective parties in their pleadings, and was conflicting. The jury found for the appellant, who is the plaintiff in the action.

The transcript does not disclose the grounds upon which the motion for a new trial was granted, and which may have been errors in law, or the insufficiency of the evidence to justify the verdict. If they were founded upon the last, then, as the testimony is conflicting, we must follow the case of *Chauvin* v. *Valiton*, 7 Mont. 581, and affirm the order appealed from. In conformity with the best practice which has prevailed in this court, and in order to settle the law of the case upon another trial, we deem it necessary and proper to review the questions which have been submitted, and decide every subject of controversy.

It is admitted that the respondents were dealers in general merchandise at the times which are mentioned in the pleadings; that one Tompkins was employed by them as clerk and salesman, and was in charge of their business when the wheat was delivered to the appellant; that the grain was subject to the inspection of the appellant, who bought the same in the belief that it was suitable for seed in the spring of 1887; that no person can ascertain by inspection the difference between spring and winter wheat; that this grain was winter wheat; and that the appellant suffered damages through the total failure of his crop.

We shall assume, for the purposes of the discussion, that the testimony of the appellant is a narration of the facts, and can thereby distinguish some of the cases which have been cited by counsel as authority from that at bar. Kircher testified that, in the fall of 1886, he looked at some wheat in the store of the respondents, and asked what kind it was. Tompkins said he didn't know, and that he sold it for chicken feed. Kircher then said that if he knew it was spring wheat he would buy sixty or seventy bushels; and Tompkins replied: "If you want to buy that much, we can find out." Kircher said: "If you can do that, find out;" and Tompkins told him "he would write and find out." That Tompkins then took Kircher back to Flager, in his office. That Flager, one of the respondents, told Kircher "he would write and find out." That afterwards Flager told Kircher "he did not have an answer, but expected one in a short time." That at another time Flager said "he did not have an answer yet, but expected one every day." That in

March, 1887, Kircher went into the store, and said to Tompkins, who was then in charge of the business of the respondents: "How about that wheat? Have you an answer yet?" He said: "We have. It is spring wheat. We have just got a car load of it." Kircher said: "Are you sure it is spring wheat?" and Tompkins replied: "What do you take me for?" The appellant then bought the wheat, but did not receive any statement or memorandum in writing concerning the transaction.

Did Tompkins, under these circumstances, and by virtue of his employment, have the authority to make this warranty that the grain, which was purchased by the appellant, was spring wheat? This court has adopted the rule, which is not disputed, and has held that the principal is responsible for the acts of his agent when they have been done within the scope of his authority, and that this liability will not be enlarged. (*Herbert* v. *King*, 1 Mont. 475; *Bank of Deer Lodge* v. *Hope Mining Co.* 3 Mont. 146; 35 Am. Rep. 458; *Bank of Billings* v. *Hall*, 8 Mont. 341.)

The power of Tompkins is also defined in the following authorities: In *Upton* v. *Suffolk County Mills*, 11 Cush. 586; 59 Am. Dec. 163, Mr. Justice Metcalf says: "A general agent is not, by virtue of his commission, permitted to depart from the usual manner of effecting what he is employed to effect. (3 Chit. Law of Com. & Man. 199.) When one authorizes another to sell goods, he is presumed to authorize him to sell in the usual manner, and only in the usual manner in which goods or things of that sort are sold. (Story on Agency, § 60. See, also, *Shaw* v. *Stone*, 1 Cush. 228.) The usage of the business in which a general agent is employed furnishes the rule by which his authority is measured." Mr. Benjamin, in his treatise on Sales, says: "The general rule is, as to all contracts including sales, that the agent is authorized to do whatever is usual to carry out the object of his agency, and it is a question for the jury to determine what is usual." (Vol. 2 [3d Eng. ed.], § 945. See, also, *Pickert* v. *Marston*, 68 Wis. 465; 60 Am. Rep. 877; *Smith* v. *Tracy*, 36 N. Y. 79; *Palmer* v. *Hatch*, 46 Mo. 585; *Stewart* v. *Woodward*, 50 Vt. 78; 23 Am. Rep. 488; *McCormick* v. *Kelly*, 28 Minn. 135; 2 Addison on Contracts, 988.)

Many of the cases which are relied on by counsel to establish the right of Tompkins to warrant the quality of the wheat are inapplicable to the facts before us. The foregoing testimony of Kircher proves that the respondent Flager and Tompkins refused, upon several occasions, to express any opinion as to the character of the grain, except that it was chicken feed. In reply to the request of the appellant, Flager promised to write a letter and find out what he could upon this point. The conversation between Tompkins and Kircher, in which the words constituting the alleged warranty were used, was in logical effect a statement that an answer had been received by Flager, from some person who is not affected by these proceedings, conveying the information that the grain was spring wheat. Tompkins was not a party to this correspondence.

The complaint does not allege that Tompkins or the respondents have been guilty of fraudulent conduct, and the gist of the action is the warranty by the agents of the respondents that the grain referred to was spring wheat.

No form of words is essential to constitute an express warranty in the sale of chattels. There is no controversy relating to these principles.

Do the conditions which have been presented subject the appellant to the rule of *caveat emptor?* The case of *Lord* v. *Grow*, 39 Pa. St. 88; 80 Am. Dec. 504, is on all fours with that set forth in the pleadings of the appellant. A portion of the statement of facts is as follows: "On the 9th of April, 1859, the plaintiff went to the defendants, who are dealers in grain, for the purpose of purchasing some seed spring wheat for sowing. He asked F. P. Grow, one of the defendants, whether he had any good seed spring wheat. Mr. Grow answered in the affirmative. . . . . The plaintiff took the wheat, which he and the miller thought was spring wheat (there being both kinds in the mill), and sowed it; but it proved to be winter wheat." Mr. Justice Strong, in the opinion, says: "We have here the bald question whether, in sales of personal property on inspection, without express warranty, the law presumes an engagement on the part of the vendor that the article sold is of the species contemplated by the parties. . . . . The tendency of the modern cases has also been to the doctrine that, in sales of arti-

cles in regard to which the seller is presumed to have superior knowledge, there is a warranty that the thing sold shall be in kind what it is represented to be. Illustrations of this are found in sales of wine by wine merchants, of jewels by a jeweler, and of medicines by a druggist. In this class of cases the buyer and the seller do not deal on equal terms. . . . . The case before us is not one of this character. The wheat was not sold by sample, and neither the contract of sale, nor the identity of the article, was defined by a bill of parcels, nor was the subject of the contract a manufactured article, ordered and supplied for a particular purpose. True, the difference between spring wheat and other wheat is not ascertainable by inspection, and it may be assumed that they are not the same in species. Still, the case is one of a purchase on inspection of an article, of which the vendor's means of knowledge were no greater than those of the vendee. . . . . To the purchaser of goods on inspection the language of the law is *caveat emptor*. There may be a few exceptions, such as we have referred to, but a sale of such an article as wheat is not one of them. When the purchaser has seen it, and gets what he saw, no warranty is implied that it is properly described by the name which the vendor gives to it."

The authorities hold that it is the duty of the buyer to make an inspection of goods, and the consequence of any omission so to do must be suffered by him. In *Barnard* v. *Kellogg*, 10 Wall. 383, Mr. Justice Davis says: " No principle of the common law has been better established, or more often affirmed, both in this country and in England, than that in sales of personal property, in the absence of express warranty, where the buyer has an opportunity to inspect the commodity, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim of *caveat emptor* applies. Such a rule, requiring the purchaser to take care of his own interest, has been found best adapted to the wants of trade in the business transactions of life. And there is no hardship in it, because, if the purchaser distrusts his judgment, he can require of the seller a warranty that the quality or condition of the goods he desires to buy corresponds with the sample exhibited." (See, also, *Reynolds* v. *Palmer*, 21 Fed. Rep. 433, note by Lawson, 439; *Lindley* v. *Hunt*, 22 Fed. Rep. 52; 1

Parsons on Contracts [5th ed.], 577; Story on Sales [4th ed.], §§ 349, 378; Biddle on Warranties, § 5; 2 Benjamin on Sales [6th Am. ed.], 843, n. 23.)

The case of *Lord* v. *Grow, supra,* is doubted by Mr. Biddle, in his work on Warranties, and the American editor of the work on Sales by Mr. Benjamin. (Biddle on Warranties, § 125; 2 Benjamin on Sales [6th Am. ed.], 843, n. 23.) But other text-writers have cited it with approval, and the same court has reiterated its doctrine in the recent case of *Shisler* v. *Baxter,* 109 Pa. St. 443; 58 Am. Rep. 738. It appeared that Shisler purchased of Baxter what both parties called "Wakefield cabbage" seeds, which cannot be distinguished by their appearance. After referring to *Lord* v. *Grow, supra,* Chief Justice Mercur says: "The vendee had just as much knowledge in regard to the kind and quality of the seed as they (the vendors) had. In such case, in the absence of express warranty, the exemption of liability of the vendor is too well settled to need any further citation of authorties." The application of these principles to the evidence of the appellant is sufficient to justify the court below in sustaining the motion for a new trial, and virtually disposes of the action, unless additional facts are shown.

While the form of the warranty is unimportant, the circumstances attending it must be critically examined. Professor Parsons expounds the law on this subject, and writes: "All warranties, however expressed, are open to such construction from surrounding circumstances, and the general character of the transaction, and the established usage in similar cases, as will make the engagement of warranty conform to the intention and understanding of the parties; *provided, however,* that the words of warranty are neither extended nor contracted in their significance beyond their fair and rational meaning. For these words of warranty are usually subjected to a careful, if not a precise and stringent, interpretation, as it is the fault of the buyer who asks for or receives a warranty if it does not cover as much ground and give him as effectual protection as he intended." (1 Parsons on Contracts [5th ed.], 576.) When the evidence of the appellant is subjected to this test, it is difficult to say that Tompkins made a warranty in any form which would be recognized by the courts. It was the duty of the

appellant to protect his interest by securing a bill of parcels which described in certain terms the wheat he purchased. The authorities hold that Tompkins had the power under his employment to execute this instrument, and thereby make an express warranty of the quality of the grain. The secret instructions of the respondents to their salesmen, which were not known by the appellant, cannot affect the transaction, and were properly excluded by the court below.

It is therefore adjudged that the order appealed from be affirmed, with costs.

HARWOOD, J., and D    'ITT, J., concur.