MURRAY, Respondent, *v.* HEINZE, Appellant.

[Submitted October 25, 1895.  Decided December 21, 1895.]

New Trial—*Insufficiency of evidence—Judicial discretion—Mining lease.*—When the evidence upon an issue as to whether the defendant, as lessee of plaintiff's mine, had worked the same in a good and workmanlike manner, is absolutely conflicting, a large number of witnesses having testified upon each side, and there being no preponderance of unrebutted testimony in favor of the verdict, the granting of a new trial for the insufficiency of the evidence to support a verdict for the defendant does not disclose an abuse of sound judicial discretion. (*Ormund* v. *Granite Mountain Mining Co.*, 11 Mont. 303, distinguished; *Chauvin* v. *Valiton*, 7 Mont. 581; *Haggin* v. *Saile*, 14 Mont. 79; *McCauley* v. *Tyler*, 11 Mont. 52, cited.)

Same—*Instruction—Specification of errors.*—A specification of error in the giving of an instruction is necessary to give the supreme court jurisdiction to review its correctness. (*State* v. *Black*, 15 Mont. 143; *State* v. *Whaley*, 16 Mont. 574, cited.)

Same—*Same—Rehearing.*—The supreme court will not grant a rehearing for the purpose of reviewing instructions as a matter of expediency to relieve litigants from the inconvenience and expense of another trial, where such instructions are not properly before it for review.

Same—*Instructions—Jury—Effect of disregarding.*—Instructions of the court, though erroneous, being the law of the case should be followed by the jury and a verdict rendered in disregard of them will be set aside as against law.

Same—*Same—Waiver—Mining lease.*—Where defendant had denied his failure to comply with the conditions of a lease, as alleged by plaintiff, he cannot, after obtaining a verdict, contend that his non-performance was known to the plaintiff and waived, in order to prevent a new trial by reason of the jury having disregarded an instruction to find for the plaintiff if the defendant had so failed to perform the contract.

Waiver—*Condition of contract.*—A waiver is the relinquishment of a known right, and

in order to support a waiver by plaintiff of defendant's failure to perform a contract it must be shown that plaintiff had knowledge of what the defendant had done contrary to the terms of the contract and what part he had failed to perform.

*Appeal from Second Judicial District, Silver Bow County.*

Action to recover possession of a mining claim and for the forfeiture of a lease. Plaintiff's motion for a new trial was granted by Speer, J. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action to recover possession of the Estella lode mining claim, situated in Silver Bow county, and to have declared forfeited a certain lease of said mine executed by plaintiff to defendant. As far as the same may be necessary, reference will be made to the pleadings, evidence, and instructions in the opinion. The case was tried to a jury, who returned a verdict for the defendant. The plaintiff made his motion for a new trial, which was granted. From the order of the court granting a new trial, the defendant appeals.

*Forbis & Forbis* and *Smith & Word,* for Appellant.

*W. W. Dixon, W. F. Sanders* and *William Scallon,* for Respondent.

Pemberton, C. J.—Among other things, the lease mentioned above contains this clause: "It is also agreed by and between the parties hereunto that the said second party shall furnish the first party or his agent a statement on the first day of each and every month during the existence of this lease, showing the amount of ore extracted from said mine, and the value of the same; and, further, that all work done on said mine shall be done in a good and workmanlike manner; and it is further understood that a failure on the part of said second party to comply with any of the foregoing conditions will annul this lease, and entitle the said first party or his agent to take possession of said mine, and terminate said lease; and the said second party hereby waives any notice of such forfeiture

on the part of the said first party; and finally it is agreed by said second party that he will work all ore extracted from said mine for $12 per ton.'' The chief contention in the case seems to be whether the defendant kept and performed the terms of this clause of the lease in working the mine.

The complaint, after alleging that the defendant failed to furnish the monthly statements mentioned in said clause of the lease, contains the following averment:   ''That the defendant has failed and neglected to work most of the ores extracted by him from said mine, under said lease, properly or skillfully, or in a good and workmanlike manner, or in such manner as to make the same most profitable to the parties to said lease, or for their mutual advantage and gain, in that he did not separate the high-grade or first-class ores extracted by him from the second-class ores, nor the said ores from the dirt, rock, waste, and ores of too low grade to pay, also extracted by him from said mine, but put all these materials, mixed together and without separating or sorting, through a concentrator, when in fact, as plaintiff alleges, the high-grade or first-class ores should not have been concentrated, and a great part of the stuff put through the concentrator would not pay for extraction or concentration, and should not have been mixed with the ores; so that the net product has been much reduced, and that the said defendant has thereby endeavored to secure to himself the contract price of working ores, for all or most of the material extracted by him from said mine, whether the same consisted of ores that would pay to work, or consisted of waste or rock containing little or no ore, or ores of such low grade as not to pay for working; and that thereby the defendant has sought to deprive plaintiff of the latter's proper share of the proceeds of the paying ores extracted from said mine, and has wrongfully retained and converted to his own use, as pretended charges for working ores, large parts of the said proceeds belonging to the plaintiff, and has caused to the latter great injury and loss.''   There are other averments in the complaint, to the effect that defendant did not work the mine properly or to the mutual advantage of both parties, and

that he so mixed rock and waste with the ores as to make them valueless or of little value to reduce or treat, to the damage of plaintiff. These allegations, as well as other allegations of the complaint are specifically denied. Upon these particular issues an immense amount of testimony was produced *pro* and *con.* As one of the counsel for the appellant stated in his argument: '' There were some thirty witnesses on one side, and the same number on the other.'' In this volume of evidence, it is not denied that there is an absolute conflict of evidence. It is un- necessary, and would. be wholly unprofitable, to extend this opinion by quoting this conflicting evidence. It is sufficient to say that the evidence is absolutely conflicting upon vitally material issues.

One ground of the motion for a new trial was the insufficiency of the evidence to justify the verdict. We are here confronted with the question as to whether the court was justified, under the circumstances, in granting the new trial. The counsel for the appellant contend that the granting of a new trial was an abuse of discretion on the part of the court. Special stress is laid upon the fact that the jury visited and inspected the mine before arriving at their verdict. In support of the contention that the court abused its discretion in granting a new trial on the ground stated above, counsel, among other authorities, rely upon *Ormund* v. *Granite Mountain Min. Co.*, 11 Mont. 303. In that case the court say the only issue was as to whether plaintiff had made a discovery within the boundaries of his claim. Three or four witnesses swore to the discovery. Thirteen witnesses, for the defendant, swore to the contrary. Their evidence was not rebutted. In addition, the jury inspected the mine, and found a verdict on the evidence, part of which was their own inspection, for the defendant. This court held that, under such circumstances, it was an abuse of '' sound legal discretion'' on the part of the trial court to grant a new trial. There was in the Ormond case apparently a great preponderance of unrebutted testimony in favor of the defendant and in support of the verdict; but in the case at bar the record shows no such preponderance of un-

rebutted evidence in support of the verdict.    Here there is an irreconcilable conflict upon the material issues, which distinguishes it from the Ormund case.

It is insisted that special importance should be given to the inspection of the mine made by the jury.    It is true that, in deliberating upon their verdict, they had the right to take into consideration their observations in connection with the evidence of the witnesses.    (*Ormund* v. *Granite Mountain Min. Co.*, referred to above, and authorities cited in that case.)    But let us consider what the jury did or could observe and ascertain by their inspection of the mine in this case.    They could form some idea as to the condition of the mine itself at the time of their visit; but they could not tell by such inspection of the mine whether the defendant had mixed the pay ores with waste, so as to reduce the value and yield thereof so low as to damage plaintiff, and render the same of diminished value to him as charged in the complaint.    They could not see and determine whether, in the treatment of the ores, the defendant had so performed his part of the lease contract as to best subserve the rights and interests of both parties thereto.    In relation to such matters the inspection of the jury necessarily amounted to nothing, and could not aid them in their deliberations upon their verdict.

Hayne, in his work on New Trials and Appeals (section 97,) says:    "As is elsewhere shown, the supreme court will not disturb the ruling of the court below upon a motion for a new trial on the ground under consideration, if there be a substantial conflict in the evidence.    The multitude of decisions laying down this rule proceed upon the theory that the motion is addressed to the discretion of the judge; and that it is so addressed has been frequently decided.    It follows that the judge may set aside a verdict, and grant a new trial, although the evidence be conflicting; and it has been held that it his duty to do so if he is not satisfied with the verdict."

Section 288 of the same work says:    "Where there is a substantial conflict in the evidence, the supreme court will not disturb the decision of the court below.    This rule has been

announced more frequently than any other rule of practice. It applies equally where the court below granted, as where it denied, the motion for new trial.'' See authorities cited in the two sections quoted above.

In *Pico* v. *Cohn*, 67 Cal. 258, 7 Pac. 680, the court says: ''In *Peters* v. *Foss*, 16 Cal. 357, it was held that a motion for a new trial is addressed to the sound discretion of the court, and this court can interfere only in case of a plain abuse of discretion by the court below. This court affirmed the same rule in *Quinn* v. *Kenyon*, 22 Cal. 82, and in the opinion it is said: 'It is only in rare instances, and upon very strong grounds, that this court will set aside an order granting a new trial.' And it has been uniformly held by this court that a motion for a new trial on the ground of insufficiency of the evidence to justify the verdict or decision is addressed to the sound legal discretion of the court below, and that, on appeal from an order granting a new trial, this court will not reverse the order, unless it appears that there has been a manifest abuse of discretion.'' See authorities cited in this case.

In *Chauvin* v. *Valiton*, 7 Mont. 581, this court held that, when there was a conflict of evidence, ''the granting of a motion for a new trial was within the discretion of the judge of the court below, and will not be disturbed when there is such conflict.''

In *Haggin* v. *Saile*, 14 Mont. 79, this court said: ''In order to justify us in reversing the order of the trial court granting a new trial, it must appear that there was an abuse of judicial discretion on the part of the trial court in granting such motion.''

In *McCauley* v. *Tyler*, 11 Mont. 52, this court considering an appeal from an order granting a new trial on the ground of the insufficiency of the evidence to support the decision of the court, quoted with approval the following language from *Quinn* v. *Kenyon*, 22 Cal. 82: ''It is only in rare instances, and upon very strong grounds, that this court will set aside an order granting a new trial.''

We think it may be said that this court has so uniformly

held to the views expressed in the above authorities that it may be considered as settled in this jurisdiction that the order of the trial court granting or refusing a motion for a new trial, on the ground of the insufficiency of the evidence to support the verdict in cases where there is a substantial conflict of evidence, is within the sound judicial discretion of the trial court, and will not be disturbed upon appeal, unless an abuse of such discretion is clearly shown. (*Landsman* v. *Thompson,* 9 Mont. 182; *Kircher* v. *Conrad,* 9 Mont. 196; *Kilby* v. *Baker,* 9 Mont. 398; *Brownfield* v. *Bier,* 15 Mont. 403; *Bradshaw* v. *Degenhart,* 15 Mont. 267.) The record in this case does not disclose an abuse of sound judicial discretion of the trial court in granting the motion for a new trial, on the ground of the insufficiency of the evidence to support the verdict.

Another ground of the motion for a new trial is that the verdict is against the law, and especially in direct disregard of instruction No. 11, given by the court at the instance of plaintiff. This instruction is as follows: "You are further instructed upon this question of the royalty that, by the provisions of the lease in question, the plaintiff was to have one-half of all ores extracted from said mine, or its equivalent, subject, however, to the other provisions in the lease, that the defendant should be entitled to receive all the ore extracted from said mine upon payment of five cents per pound for copper so extracted, and ninety per cent. of the market quotation for all the silver so extracted from said mine. You are instructed that it appears from the uncontradicted evidence in the case that both of the parties to said lease construe the same to mean that the plaintiff should receive his share of the ore, or the payments due therefor in case the defendant took the ore, on the last day of each month or the first day of the next succeeding month, to wit, at the same time that statements were to be furnished under said lease; and this construction, adopted by the parties, must control in this case, for, if it did not, then the ore should have been paid for as soon as taken, which would have made it payable sooner than it would be under the construction so placed on the lease by the said parties. It appears

from the statements furnished by defendant to plaintiff that the defendant has charged as smelting charges $12 per ton upon the whole of the material taken away from said mine for treatment, and reported as second-class ore. If you find from the evidence that all of the material taken away from the mine, and reported by the defendant, in his statements, as second class, was not or is not to be smelted,—that is to say, if you find that a part of the same has disappeared through concentration of this material or otherwise,—then you are instructed that the defendant had no right to make any such charge for smelting ores going $1 less than $12 per ton; that is to say, the defendant had no right to charge $12 per ton for anything that has not been or is not to be smelted, or for anything that has disappeared in concentration or dressing of ores yielding less than $12 per ton, if you find from the evidence that any part of the material taken from the mine as second-class ore has so disappeared, and was of a value less than $12. And if you further find from the evidence that the defendant has made such charges upon material of such character of ores not smelted, and which has disappeared in concentration, and that he has retained moneys for such charges, or part of them, then you will find for plaintiff.''

We think it cannot be successfully contended that the verdict is not directly contrary to the above instruction. Counsel for the appellant do not seriously contend that the verdict is not in conflict therewith. They do contend, however, that the plaintiff waived the matters done, and to be done, by defendant, referred to in the instruction. The question of waiver by plaintiff will be treated hereafter. The chief contention of counsel for appellant is that the instruction is erroneous, and, being erroneous, the verdict should not have been set aside, although the jury wholly disregarded it, if the verdict was otherwise in accordance with the law.

Whether the instruction is erroneous we cannot determine on this appeal. It is nowhere specified as error in the record. This is an appeal from an order granting a new trial on the motion of the plaintiff. In his motion for a new trial, plaint-

iff contended that the instruction was properly given as the law of the case, and that the jury had disregarded it in arriving at their verdict.     There is no bill of exceptions or specifications of errors in the record as to the giving of this instruction, or any other matter occurring at the trial.     The plaintiff did not except to the giving of the instruction.     The defendant got the verdict, and there was no occasion for his preserving exceptions to the giving thereof.     So that the record is here without an exception being saved as to the giving of the instruction.     A specification of error in the giving of this instruction is necessary to give this court jurisdiction to pass upon its correctness.     Such has been the uniform holding of this court, even in criminal cases.     (*State* v. *Black* 15 Mont. 143, and cases cited therein; *State* v. *Whaley*, 16 Mont. 574.)     If this were an appeal from the judgment, and an exception had been properly saved to the giving of this instruction, we could review it.     As the record stands, we are without jurisdiction so to do.     If there had been a bill of exceptions, it would be part of the judgment roll, and reviewable on an appeal from the judgment.

But counsel for the appellant contend that, the instruction being erroneous, the court erred in setting aside the verdict, because of the fact that the jury wholly disregarded it.     The question presented is, had the jury the right to disregard the instructions of the court if erroneous?     This is a most important question in the administration of the law.     It must be conceded that there is a conflict of authority on this question. Counsel for the appellant cite a number of authorities in support of their claim that the jury may disregard the instructions of the court if erroneous, if the verdict is otherwise in accord with the law, and that it would be error in the court, under such circumstances, to set aside the verdict.     It seems from the authorities cited by appellant that Kentucky, Georgia, Texas, and some other states have so held.     A number of the cases cited by counsel for appellant are not exactly in point; that is, they are cases in which the jury did not seemingly disregard the erroneous instructions upon vitally mate-

rial issues in the case, and where the verdict was in conformity with the charge of the court taken as a whole. But it must be confessed that some of the authorities cited hold that the jury have a right to disregard erroneous instructions of the court, and that the verdict should not be set aside in such case if in accord with correct law. But we must not here overlook the fact that in this case we are unable to review and determine whether the instruction involved was erroneous or not. For this reason, much that has been said by counsel upon this question loses its force, if it does not become absolutely immaterial. All the authorities cited by appellant hold that the jury may disregard the instructions of the court only when such instructions are clearly erroneous. For the reasons given above, we are unable to determine whether the instruction was erroneous.

But concede that the instruction was erroneous; did the jury have the right to disregard it? Upon this question, in *Savery* v. *Busick*, 11 Iowa 487, the court says: "Whatever may be our view of the law of this case, it is impossible for us to express it, or consider the questions presented, without going behind the action of the jury in trampling upon the authority of the court, and thereby giving some countenance to their assumption. This we are unwilling to do even by the slightest implication. It is no more competent for the jury to usurp the powers of the court than it is for the court to interfere with their province in the ascertainment of facts. And when the jury, in this case, arrogated to themselves the right to determine the law in direct opposition to the instructions given them by the court, they were guilty of a flagrant abuse of their duties and obligations; and we will not review this case until it is tried upon the law as it shall be expounded by the court, and not by the jury." See, also *Caffrey* v. *Groome*, 10 Iowa, 548; *Cobb* v. *Railroad Co.*, 38 Iowa, 601; *Sullivan* v. *Otis*, 39 Iowa, 328; *Crane* v. *Railway Co.*, 74 Iowa, 330, 37 N. W. 397.

In *Dent* v. *Bryce*, 16 S. C. 1-14, in discussing the province and powers of the jury, the court says: "The court was the

judge of the question of law, and the jury of the question of fact. Under our system, this is the case in all jury trials. The court decides the question of law, and the jury the facts. The value of this system depends greatly upon the preservation of this distinction. The functions of each should not only be preserved intact, but should be kept separate and apart. So important was this regarded by the founders of our judicial system that it was expressly provided in the fundamental law of the state government—the constitution—that the judges should not only be limited to questions of law, but should be forbidden to comment on the facts, True, there is no such express inhibition upon the jury invading the province of the court, but this, no doubt, was because such invasion was not supposed possible. It needs no authority, then, to say that the jury is bound to take the law from the court. This principle applies in every class of cases, except one not necessary now to be considered. And, when the law is announced by the court, it is the law of the case, until overruled by a higher authority. It follows, then, that a verdict in direct conflict with the law of the court is a verdict against the law, and will in all cases be vacated in the first instance, either *sua sponte* by the judge, or on motion of the aggrieved party. Any other doctrine would lead to the utmost confusion. If the jury could question the charge of the judge, the result would be that, in every case, the whole case, both law and facts, would go to the jury, under the hope that, whatever might be the charge of the judge at the time, he could be satisfied afterwards that he was in error. This could not be tolerated. It would degrade the judiciary, and unhinge the whole system. The argument of the respondent, by which he attempts to draw a distinction between a verdict contrary to the charge of the judge and one contrary to law, though ingenious, fails to meet the case. In fact, that doctrine would open the door to the very evil which a separation of the powers and duties of the court and jury was intended to prevent. So far as the jury is concerned, there is no such thing as the charge of the judge being contrary to law, because, whatever

may be his charge, it is the law to them." (*Thompson* v. *Lee*, 19 S. C. 489.) In *Emerson* v. *County of Santa Clara*, 40 Cal. 543, the court says: "It is admitted that the verdict was contrary to the instructions actually given by the court, but it is said that it ought not to be disturbed because the instruction itself was not correct in point of law. A verdict of a jury in disobedience to the instructions of the court upon a point of law is a verdict, 'against law,' within the meaning of subdivision 6, § 193, of the practice act, and for that reason should be set aside without further consideration. It matters not if the instruction disobeyed be itself erroneous in point of law. It is, nevertheless, binding upon the jury, who can no more be permitted to look beyond the instruction of the court to ascertain the law than they would be allowed to go outside of the evidence to find the facts of the case." See, also *Aguirre* v. *Alexander*, 58 Cal. 30; *Loveland* v. *Gardner*, 79 Cal. 321, 21 Pac. 766; *Lind* v. *Closs*, 88 Cal. 11, 25 Pac. 972.

In the three states whose decisions are cited above, it seems to be the settled doctrine that the instructions of the court are the law of the case, as far as the jury are concerned, even though the instructions be erroneous, and that a verdict will be set aside, as "against law," if rendered in disregard thereof. And, in this connection, it is of importance to note that our practice act was borrowed from California, after the decision of the case in *Emerson* v. *County of Santa Clara*, quoted above. We thereby impliedly adopted the construction given to the same by the California court. (*Stackpole* v. *Hallahan*, 16 Mont. 40 and authorities cited.)

But let it be conceded that there is a conflict of authorities upon the question under discussion; or let us suppose that it is a new question, without any adjudications or authority in either event; what course should this court pursue? It has always been held in this jurisdiction that it was the sole province of the jury to determine questions of fact. It has been uniformly held that it was error for the court to invade this special province of the jury, by even commenting on the evidence. (*State* v. *Sullivan*, 9 Mont. 174, and authorities cited.)

Our system of practice is certainly based upon the theory that it is the province of the jury to determine the facts, and that of the court to determine and declare the law, in all cases, except in prosecutions for libel. "The jury, under the direction of the court, shall determine the law and the facts." (State Const. art. III, § 10.) From this constitutional clause it seems plain that the jury have no right to determine the law in any other case. "*Expressio unius est exclusio alterius.*"

This is the first time it has been seriously contended in this court that the jury have the right to determine the law in an ordinary suit at law, and to absolutely disregard the instructions of the court, on the ground that, in the opinion of the jury, the instructions of the court are erroneous. If the contention of the appellant is to be upheld, what may we not anticipate as the result in the administration of the law in this state? If the jury may rightfully invade the province of the court, why may not the court retaliate by invading the province of the jury, and determining questions of fact? As counsel for the respondent suggest, if the contention of appellant is correct, then, logically, there is an appeal in all cases upon questions of law from the trial court to the jury. And, as counsel for respondent further suggest in their argument, if the jury may determine the law an attorney arguing a case may say to the jury: "The court will charge you that the law is so and so, but I say to you the court is wrong. You, the jury, are the judges of the law, and may determine it for yourselves." Would any court permit such an argument to a jury? Certainly not. But, if the jury are the judges of the law, why should a court prohibit such an argument to them? If a juror should state upon his *voir dire* that he would not be governed by the law as declared by the court if he thought the instructions erroneous, nobody would doubt that he would not be permitted to sit in the case. Yet, if he has the right as a juror to determine the law, we do not see why he should be. challenged for asserting that right. If the contention of appellant is correct, the time of this court in hearing future appeals will be devoted to determining whether the court or the

jury were right in their views of the law in the trial of the cause in the lower court. Authority or no authority, we cannot give our sanction to a practice that would lead to such results. Such a course would ultimately result in overturning our system of keeping separate and distinct the powers and duties of courts and juries, confining each to its own proper province, in the degradation of the courts, and confusion and chaos in the administration of the law. Such calamities are much more to be deplored than the inconvenience and costs of a new trial in cases where juries usurp the powers of the court, which seem to exercise the counsel for the appellant in this case.

We regret that, after much consultation and thought, we are unable to treat the instruction referred to on account of the condition of the record. But as this court held, in effect, in *State* v. *Pilgrim*, *ante*, p. 311, the rules and law of practice must be observed in order to give this court jurisdiction to determine errors relied on. And, besides, we cannot express our opinion as to the correctness of the instruction "without," as was said in *Savery* v. *Busick*, quoted above, "going behind the action of the jury in trampling upon the authority of the court, and thereby giving some countenance to their assumption. This we are unwilling to do even by the slightest implication." The instruction was given upon vital issues of fact in the case. It was the law of the case as far as the jury were concerned. They had no right to disregard it if erroneous. The verdict rendered in disregard thereof was "against law," notwithstanding it may be erroneous; and the court was justified in setting it aside.

Counsel for the appellant contend that the respondent waived the doing on the part of appellant of the things which are referred to in instruction No. 11, and that the court instructed the jury that, if they found that respondent had waived the performance of such things on the part of defendant, they would find their verdict for the appellant. The court did instruct the jury that if they found that there was an agreement made by the parties subsequent to the execution of the lease, by which payments of the ores were to be postponed from the

first of each month until appellant could realize therefrom, respondent could not claim a forfeiture of the lease on account of such postponement.    There is evidence of such agreement as to the payments to be made for the ores.    But there are other matters referred to in instruction No. 11.    It is alleged in the complaint that appellant was bound to work the mine in a workmanlike manner; that he was to work it for the mutual benefit of both parties.    It is charged that he did not do these things.    It is alleged that he so mixed the pay ores with rock and waste as to reduce the output of the mine, consisting of all the ore taken therefrom by him, below the value of $12; in fact, that he thereby so reduced the ore as to render it of little or no value, to the great damage of the respondent.    So that, if it be admitted that the time of payment of the ores was changed or waived, still we are unable to find in the record any evidence that respondent waived the performance of the other things charged in the complaint, and covered by the instruction.    If appellant failed to work the mine in a workmanlike manner, or if he so mixed the pay ores with rock and waste as to render them of little or no value, as charged in the complaint, and submitted as issues of fact under instruction No. 11, we are unable to find any evidence of it in the record. By changing the time of payment of the ores, he did not waive the performance of these other important parts of the contract. In fact, it appears from the evidence that very soon after the respondent became aware, as he claims, that appellant was not working the mine in a workmanlike manner, and was wrongfully mixing the ores with rock and waste, as stated above, he declared the lease forfeited, and commenced this suit.

The appellant denies the doing of these things in his answer. It seems that it would be inconsistent now for him to say that he did do them; that the respondent had knowledge of his having done them; and, having such knowledge, that he waived the doing thereof, as well as the nonperformance of other matters charged in the complaint, and submitted as issues of fact in instruction No. 11.    To constitute a waiver on the part of respondent of the performance of the contract on the part

of appellant, it must be shown that respondent had knowledge of what appellant had done contrary to the terms of the contract, and what part thereof he had failed to perform. A waiver is the relinquishment of a known right. (*Pence* v. *Langdon*, 99 U. S. 581; *Bennecke* v. *Insurance Co.*, 105 U. S. 355; Bish. Cont., §§ 658, 659; *Hamilton* v. *Woodworth, ante*, page 327.) This is not shown, nor is there any instruction in the case based upon the assumption that it was shown, or attempted to be shown by the evidence. We think the contention on the part of counsel for the appellant that respondent waived the performance of the contract on the part of the appellant, or any act alleged to have been done by appellant in violation thereof, or that the jury, by following the instruction of the court as to such waiver, did not disregard instruction No. 11, cannot be supported by the record.

A careful consideration of the record fails to disclose any abuse of a sound judicial discretion on the part of the lower court in granting the motion for a new trial. The order appealed from is therefore affirmed.

*Affirmed.*

DE WITT and HUNT, JJ., concur.

---

## ON REHEARING.

PER CURIAM.—Counsel for appellant in the petition for rehearing urge the court to pass upon the question as to whether the instructions given in the case were erroneous. In the opinion heretofore delivered in the case, we said after much reflection, that we could not consider or pass upon this question for the reason that they were not so presented by the record as to enable us to do so. Counsel now urge us to do so as a matter of convenience or expediency to avoid the expenses of another trial of the case. They refer us to no authority conferring jurisdiction upon this court to do so in the condition of this record as shown in the opinion of this court delivered in

the case.   Our own reports are full of decisions to the effect
that we have no jurisdiction to do so.   We can not ignore the
uniform course of decisions of this court in order to relieve the
litigants of the costs, inconvenience and hardship of another
trial of the cause.

The petition for rehearing is denied.

*Rehearing denied.*