STATE, Respondent, v. SMITH, Appellant.

No. 9162.

Submitted April 23, 1952. Decided July 1, 1952.

246 Pac. (2d) 227.

Mr. Raymond Shelden, Ekalaka, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Charles V. Huppe, Asst. Atty. Gen., Mr. H. M. Brickett, Asst. Atty. Gen., Mr. Roy W. Holmes, County Atty., Ekalaka, for respondent.

Mr. Shelden, Mr. Brickett and Mr. Holmes argued orally.

MR. JUSTICE FREEBOURN:

Defendant was charged by information with the crime of first degree assault by making "an assault upon one John Shuffield, a human being, with a deadly weapon likely to produce death, to-wit: a rifle * * * which defendant did * * * shoot off and discharge at the said John Shuffield with the intent * * * to kill said John Shuffield."

Defendant, found guilty by the jury of assault in the second degree, was by the court sentenced to serve one year in the state prison. From the judgment of conviction he appeals.

First and second degree assault, as applicable here, are defined as follows: "Every person who, with intent to kill a human being * * * assaults another with a loaded firearm * * * is guilty of assault in the first degree." R. C. M. 1947, sec. 94-601, subd. 1. "Every person who, under circumstances not amounting to the offense specified in the last section * * wilfully and wrongfully assaults another by the use of a weapon,

or other instrument or thing likely to produce grievous bodily harm * * * is guilty of an assault in the second degree." R. C. M. 1947, sec. 94-602, subd. 4.

There were only two witnesses to the happenings which it is alleged constituted the crime with which defendant was charged. They are defendant and John Shuffield, the man it is alleged defendant tried to kill.

No one disputes the fact that a shot was fired from a .22 rifle in defendant's possession while the two men were in close proximity to one another. Shuffield's testimony tends to show that defendant placed the rifle butt to his right shoulder, aimed the rifle directly at Shuffield, and while the point or end of the rifle barrel was 8 feet from Shuffield's body, pulled the trigger—and did not hit the target. Defendant, denying what Shuffield said, testified the gun was not aimed at Shuffield and that the gun fired accidentally.

If the gun fired accidentally, defendant was entitled to a verdict of not guilty.

A person is not capable of committing a crime who commits the act or makes the omission charged "through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." R. C. M. 1947, sec. 94-201, subd. 6.

The court properly gave instruction No. 16, to the jury, which is as follows: "You are instructed that if you believe from the evidence, or have a reasonable doubt, that the gun of the defendant, at the time of the alleged assault, was accidentally discharged, then you shall find the defendant not guilty."

This instruction became the law of the case and was binding upon the jury. Compare Murray v. Heinze, 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714; State v. Northern Pac. Ry. Co., 41 Mont. 557, 111 Pac. 141.

A reasonable person reading the record of this case and examining the rifle, which is before us, must have a reasonable doubt as to whether such firing was intentional. The rifle

is strong evidence that such firing was accidental. It is an old .22 caliber, single shot, bolt action Winchester, with barrel and stock held together with adhesive tape. It is fitted with a worn out, defective sear and safety.

Witnesses Meade and Kims testified as gun experts. Meade said: "When she's cocked, well you can just do this (knocking butt of gun on floor) and she's gone; * * * do this and when she's cocked and like this, she's gone again (witness held gun in his right hand and upon jarring it with his left hand the firing pin was released)." An "awful light" jar does it. "I'd say a hair trigger and dangerous. * * * I don't think the gun is safe at all. * * * if you had a hunting coat or any kind of a vest on and with this trigger being so light, any kind of garment brushing it would cause the gun to discharge. * * * That is a dangerous weapon. * * * The sear is worn off and it can go off any time. * * * it's just worn out and when that there don't catch, if it don't catch far enough on that when you cock it it could go off by just breathing on that trigger; that gun is dangerous. * * * Laying it down might make it go off. * * * I wouldn't say you had to touch the trigger on that kind of a rifle. I believe all you'd have to do is jar a part of it; you wouldn't have to touch the trigger. * * * Just touching that gun and if it happens just the right way it will go off. If you will take it apart and look at it you'll see that at the point there at stock that's not dented right, that is a dangerous weapon."

Witness Kims said: "I tried several ways to fire it without touching the trigger and it can be done. * * * by bumping it * * * pull that part down it goes off * * * if this were raised in any way just a little it would go off. * * * Any way you touch this to bring it out on clothing or anything would fire it. * * * change of temperature could set it off if it were set right." He said the rifle had a hair trigger and pulling the gun against a person's clothing, or brushing the gun across the front of a man's coat might cause accidental discharge of the gun.

According to Shuffield the defendant and he had never met until the day of the alleged assault and there was no reason why defendant should shoot him. His testimony shows:

"Q. But he didn't make any threat against you, did he? A. No.

"Q. He didn't say he was going to shoot you, did he? A. No. * * *

"Q. Do you know of any reason why he would want to shoot you? A. I don't know why or anything about it.

"Q. You don't know why he should want to hurt you, did you? A. No, sir.

"Q. You don't know of any trouble, any trouble whatever either of you or he had with each other, do you not? A. No, sir. * * *

"Q. And you don't know of any reason why he should be angry at you? A. That is right.

"Q. And you don't know of any reason why he wanted to harm you? A. That's right.

"Q. And there wasn't any motive for shooting, was there? A. No, sir."

Defendant, a veteran of World War II, receiving compensation for service connected disability, was a mechanic by trade, but because of poor health and acting on advice of his doctors, to get out in the fresh air and sunshine, went to herding sheep.

As a drill sergeant and basic instructor during the war, defendant instructed recruits in the use of rifles and pistols. He was honorably discharged with his military record showing that he was awarded a marksman badge with bars for both rifle and pistol.

An experienced marksman, as was defendant, standing but 10 feet from Shuffield with the rifle point but 8 feet from his intended victim, would not have missed had he been aiming at the prosecuting witness, and the fact that Shuffield was not hit supports defendant's testimony that the firing was accidental. Shuffield's reaction to the shot was that of a man who is surprised, rather than a man who knew he was being used

as a target. His only reaction and words were: "I asked him what he was trying to do."

Defendant's version of the affair seems supported by the circumstances. He said he "had the rifle in my hand across my arm and the rifle went off." He said he did not have his finger on the trigger or intend to shoot Shuffield.

The rifle belonged to defendant's employer and it was supplied to defendant when he hired out as a sheepherder. It was furnished by the employer to use on coyotes and to shoot rabbits for meat to feed the sheep dogs.

Prior to the alleged assault defendant had been shooting at rabbits. Shuffield "figured * * * he was shooting" at his car. However no bullet hit the car. Shuffield's testimony shows:

"Q. He didn't hit your car? A. No, sir, but he was still shooting there.

"Q. Wasn't there any jack rabbits around there? A. Sure there is jack rabbits.

"Q. Jack rabbits all over the country? A. Yes."

After a careful consideration of all the evidence presented by the record before us we are of the opinion that such evidence was insufficient to justify defendant's conviction.

Accordingly the judgment is reversed and the cause is remanded to the district court with instructions to dismiss. It is so ordered. Remittitur will issue forthwith.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, BOTTOMLY and ANGSTMAN, concur.