CRANE v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY *et al.*

1. **New Trial**: VERDICT CONTRARY TO INSTRUCTIONS. Where a verdict is contrary to the instructions of the court, whether those instructions are right or wrong, it may properly be set aside and a new trial granted.

2. **Mandamus**: BY PRIVATE CITIZEN TO CONTROL LOCATION OF RAILROAD: PUBLIC INTEREST THE TEST. Plaintiff, a resident taxpayer of the town of Polk City, for himself and others, sought to compel the defendant to relocate its main line of railroad so as to run through said town, on the ground that it had originally been so located, and had been aided in its construction by a tax raised in the township, and also by a grant of lands from the county, all upon the condition that it should run by Polk City. *Held* that, unless the interests of the general public were shown to be injuriously affected by defendant's removal of its main line from said town, while it yet gave the town railway facilities by means of a branch, plaintiff was not entitled to the relief asked,—his personal damage, if any, not being ground for such relief.

*Appeal from Polk District Court.*—HON. JOSIAH GIVEN, Judge.

FILED, MARCH 12, 1888.

ACTION of *mandamus*. Trial by jury, and finding for plaintiff. A motion for a new trial was sustained and plaintiff appeals.

*Callender & Smith* and *Barcroft & Bowen*, for appellant.

*Hubbard & Dawley*, for appellees.

SEEVERS, C. J.—The plaintiff is a resident voter, taxpayer and property-holder of Polk City, in Madison township, Polk county, Iowa, and brings this action for himself and other voters, taxpayers and property-holders in Polk City, and the petition in substance states

that the defendant, the Des Moines & Minneapolis Railroad Company, was a corporation organized under the laws of Iowa; that the object, as defined by the charter of said corporation, was to construct and operate a railroad from Des Moines to the state line between the states of Iowa and Minnesota; that prior to August, 1870, said line of road was located through Polk county by Polk City; that a tax was voted in said Madison township, upon the taxable property therein, to aid in the construction of said road from Des Moines by Polk City to Ames, in Story county; that said road was constructed and operated by the way of Polk City from Des Moines to Ames, Polk City being a station on its main line between said places; that said company having complied with the conditions upon which the tax was voted, the same, amounting to about seventeen thousand dollars, was collected and paid to said company; that the county of Polk conveyed to said company about fifteen thousand acres of swamp land belonging to the county, upon the express condition that said railroad should be constructed and operated through and by Polk City; that many citizens of Polk City subscribed and paid for stock in said company upon like conditions; that said road was operated for several years by Polk City as a through line between said places; that in the year 1879, the defendant, the Chicago & Northwestern Railroad Company, leased and became in possession of all the franchises, privileges and property of said former company and of the railroad, and changed the location thereof, and has built and is now operating its main line of road about two miles east of Polk City, to the great damage of the plaintiff and other property-owners in Polk City, and that said line is entirely a different line from the one in aid of which taxes were voted; that plaintiff has demanded of the last-named company that it operate the road as it was originally constructed, which the said defendant refuses to do; that plaintiff owns property in Polk City, which has greatly depreciated in value because of such refusal. The relief asked is that defendant be

compelled to operate the road as it was originally constructed and operated. The answer admits some of the allegations of the petition, and denies others. It is denied that plaintiff, or other citizens, sustained any damage by the change made. It is alleged that the road constructed by the Des Moines Company was a narrow-gauge road, which has been changed to a standard gauge, and that the road as now operated has become part of an extensive system of railroads; and that it has become part of a through line between Des Moines and St. Paul. It is also alleged that such road is of greater value and of more use and benefit to the plaintiff and other citizens of Polk City than it was as originally constructed; that, under a contract or understanding with thirty-five of the principal taxpayers of Polk City, a change in the location of the road as originally constructed was made, so that the main line thereof is operated about two miles east of Polk City, but that a broad-gauge road was constructed from Polk City to a point about two miles northeast thereof, where it connected with the main line; and that two passenger trains are run daily from the main line to Polk City on their way from Des Moines to Ames, and two mixed passenger and freight trains are operated to and from Polk City in the same manner. It is also alleged that the line as operated is more advantageous to the plaintiff and other property-owners in Polk City than as the road was originally constructed; and the road as now operated affords reasonable and sufficient facilities for the trade and commerce of Polk City, and for all persons going to or from there; that, owing to the heavy grades, a first-class road could not be operated by Polk City. The defendants also pleaded an estoppel and the statute of limitations. There may be other allegations of the petition and answer to which we have not deemed it necessary to refer.

The court, among others, gave the following instructions to the jury:

"3. I instruct you that, under the uncontroverted facts, the Chicago & Northwestern Railway Company

is bound to maintain and operate a railway substantially upon the line as originally located and constructed, so as to afford reasonable railway facilities to the public. Said company has, however, the right to make reasonable changes and variations from the line as originally constructed and operated, if, in so doing, the public interests would be promoted, though, incidentally, the plaintiff or others would sustain damage by the change."

"5. You will first decide whether the public interest is concerned in having the main line of said road operated by way of Polk City. You observe it is as to the public interest you are to inquire, and not merely as to the interest of Polk City and vicinity. It is as to the interest of the general public, including those who do business at and with Polk City, in traffic and travel over said road, that you are to consider. In deciding this issue, you will take into consideration the wants of the general public in the way of railroad facilities over that road, the facilities afforded by the road operated as it is, and as it would be if operated as a main line by way of Polk City, and all facts proven, fairly tending to show whether the public interest is concerned in this matter."

"11. In order to enable the plaintiff to maintain his suit, it is not enough that he may have sustained damage by depreciation of his property at Polk City or otherwise; or that other citizens of Polk City have sustained such damage by the change in location and operation of the road. It must further appear that the public interest requires the road to be operated upon the original line; or, if there is no public interest which has received detriment, there has been no breach of a public trust or duty on the part of the defendants, or either of them."

"12. The public interest, which must have received detriment by the change in the location and operation of the railroad, must be not merely the interest of the general public of Polk City or its vicinity, but of the general public, or the people of this state, who use defendant's

line of railway for traffic or travel; and if this general interest will not be promoted by the relocation and operation of the road upon the original line, then the plaintiff cannot maintain this suit, even though the jury should find that it would be for the interests of the plaintiff and other citizens of Polk City to have the railway maintained and operated over the original line.''

I. The defendants filed a motion for a new trial upon several grounds, among which are that the

**1. New trial: verdict contrary to instructions.** verdict is not in accord with the foregoing instructions, and that, under the evidence and said instructions, the verdict should have been for the defendants. This motion was sustained, but upon what ground we are not advised. If, however, any single ground of the motion is well taken, the ruling of the court must be sustained. The instructions, whether right or wrong, constitute the law of the case, and it was the duty of the jury to follow them. The instructions lay down the rule that, unless the interests of the general public have been injuriously affected by what the defendants did, then the plaintiff is not entitled to recover. There is no evidence tending to show that the interests of the public have been prejudicially affected. Fairly considered, we think the evidence shows that the general public have been benefited by the change made in the location of the road. Therefore, the verdict is against the instructions of the court, and the court rightly held that the defendants were entitled to a new trial.

II. Counsel for the appellant insist that the foregoing instructions are erroneous, and it is insisted that

**2. Mandamus: by private citizen to control location of railroad: public interest the test.** we determine this question now, so that both parties may be advised as to their rights when another trial is had. It is provided by statute that the ''order of mandamus is granted on the petition of any private party aggrieved'' (Code, sec. 3377); and, conceding that *mandamus* is the proper remedy, the inquiry is whether a private person may pursue such

Crane v. The Chicago & N. W. Ry. Co.

remedy without regard to the public interest, or in disregard thereto. It is said that the weight of authority sustains the proposition that "where the question is one of public right, and the object of a *mandamus* is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator, at whose instigation the proceedings are instituted, need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen, and as such is interested in the execution of the laws." High Extr. Rem., secs. 431, 432. This being so, it seems to us that it necessarily follows that, unless the public interests have been injuriously affected, a private individual cannot insist that a public right or duty be enforced. If he can, it must logically follow that he may do so when the public interests have been benefited, and thus compel the performance of a duty which the general public have waived or acquiesced in and expressly recognized what has been done. For instance, if the plaintiff is successful in this action, the defendant will be compelled to construct and operate its main line of road by Polk City. Now, it may, for the purpose of argument, be assumed that this would injuriously affect the interest of the general public, and that the representatives of the general public do not desire that the main line of the road should be so operated. In such case, why should the plaintiff have the power to enforce such duty? On the sole ground, we presume, that his private interests have been injuriously affected, when the public interests possibly have been benefited. Whatever right the plaintiff has must be grounded on the fact that performance of a public duty is cast on the defendant. There is not, and never was, a duty or obligation based on any contract existing between the plaintiff and either of the defendants. But the theory of the plaintiff is that, when one of the defendants accepted the tax on the condition upon which it was voted, it became the duty of such defendant and its successors to construct and operate the road in accordance with the conditions upon which the tax was voted,

and that he may enforce such public duty in this action, if he shows that he has suffered private damage because of the defendants' failure. This will be conceded, if the public interests have also been injuriously affected, and not otherwise. If this is not so, then, under the pretense of vindicating and enforcing a public right, a private individual might inflict great and possibly irreparable injury on the general public. This, it seems to us, he should not be permitted to do in a case like this. The case under consideration is materially different from one where an officer is entitled to compensation which another officer refuses to pay. In such case the former may clearly have *mandamus* to enforce the payment of such compensation. Other cases of a similar character may no doubt be suggested. In the case at bar there is no private right, but, it will be conceded, a public right or duty which the plaintiff seeks to enforce. This he cannot do unless the public interests have been injuriously affected, and, therefore, the instructions above set out are correct. The instructions, of course, were given on the theory that there was evidence tending to show that the accommodations afforded by the defendant by running trains to and from Polk City were fairly and substantially sufficient for all the purposes of trade and the accommodation of passengers to and from Polk City. The plaintiff and other citizens thereof have not been deprived of railroad facilities.

The judgment of the district court must be

AFFIRMED.