(73 N. W. Rep. 70).

---

HERMAN ROEHR *vs.* GREAT NORTHERN RAILWAY COMPANY.

Opinion filed November 8th, 1897.

**Verdict—Findings—Evidence to Sustain.**

> Where a jury follow instructions of the court, limiting them to a particular ground of negligence, their verdict cannot be sustained if there is no evidence

> to support a finding of that particular negligence, even though there was evidence in the case tending to prove other negligence, and such negligence was set up in the complaint.

Appeal from District Court, Williams County; *Morgan*, J.

Action by Herman Roehr against the Great Northern Railway Company to recover for hay destroyed by fire negligently set out by defendant. From a judgment for plaintiff, defendant appeals. Reversed.

*W. E. Dodge*, for appellant.

*N. A. Stewart* and *J. H. Bosard*, for respondent.

CORLISS, C. J. Plaintiff has recovered a judgment for damages caused by the alleged negligent setting out of a fire by one of defendant's locomotive engines. The property destroyed by the fire was hay. That plaintiff was the owner thereof does not admit of doubt. It was cut by him on the land of another, under an agreement with the owner of such land, by the terms of which plaintiff was sold the right to cut such hay. The land had been filed on at the time the plaintiff made this agreement and severed the grass, and was in the actual possession of the person with whom he made the contract. Two grounds of negligence are set forth in the complaint. It is alleged that defendant's servants negligently operated the engine, and also that it carelessly permitted combustible material to accumulate on its right of way, and that the fire caught thereon, and from that point spread to the plaintiff's land, and destroyed his hay. The judgment cannot be sustained on the theory of negligence in operating the engine; for while the complaint averred such negligence, and there was evidence to sustain the allegation, yet, the District Court having instructed the jury that they could consider only the charge of negligence which related to the right of way, we cannot assume that the jury have found any other carelessness on the part of the defendant. Indeed, the jury, by their special verdict in the case, have negatived any possible inference that they intended to assert by their general verdict that there was any negligence in the

operation of the engine. While we believe it was error to thus restrict the jury to a single ground of negligence where two grounds were set forth, yet the court's instructions became the law of the case, and the jury had no right to disregard them. Any verdict based upon a refusal to apply the law as laid down by the court would be a verdict against law, although the law itself was erroneously stated to the jury. *Crane* v. *Railway Co.* (Iowa) 37 N. W. Rep. 397; *C. Aultman & Co.* v. *Reams* (Neb.) 4 N. W. Rep. 81; *Graham* v. *McGeoch* (Iowa) 15 N. W. Rep. 592; *Emerson* v. *County of Santa Clara*, 40 Cal. 543.

It is possible that, in a case where it is clear that the jury have applied the correct rule of law, the verdict should not be disturbed. On that point we express no opinion. But in this case we have no right to assume, in the very face of the special verdict of the jury, that the general verdict rests upon a finding by the jury that the engine was carelessly managed by defendant's servants. It affirmatively appears that the jury have obeyed the instructions of the court, and that, therefore, they have not decided the case on the theory of any negligence other than that connected with the defendant's conduct with respect to the right of way. The question therefore is presented whether there is any evidence to support the finding that the fire started on the right of way. We think there is not. There was no direct proof as to the width of defendant's right of way at the point where the fire caught. There was evidence tending to show that the fire was ignited more than 90 feet, but less than 100 feet, from the center of the track. But the important inquiry is whether the right of way at this point was 100 feet wide. If it was only fifty feet, or even if it was 90 feet, the verdict of the jury that the sparks fell on the right of way is not supported by the evidence. We are entirely in the dark as to any use by the defendant of the land at this point as a right of way. It appears that, a year before, several furrows had been plowed, by persons hired by the defendant for that purpose, at a distance of about 140 feet from the

center of the track, the furrows running practically parallel with the roadbed. But it is undisputed that this was an act of trespass on the part of the defendant, as it appears that those furrows were upon the land of another; and the owner of this land is positive in his testimony that he had been in possession thereof for six years. Never at any other time or in any other way has the defendant used the land between those furrows and the point where the fire started, as a right of way. There is no evidence of user whatever. The fire was set on the north side of a creek which is north of defendant's track, and which flows in the same general direction in which the roadbed runs. At the point where the fire was started, the north side of this creek is 92 feet from the center of defendant's track. Between this creek and the furrows referred to, the distance was about 50 feet. Thomas Gains, who owned the land at this point, testified as follows, with reference to the land which it is claimed was a part of the defendant's right of way in 1895, when the fire was set out: "Q. You have referred to a furrow which was plowed some time in 1893 alongside of Stony creek, on the north side of the creek. Now I will ask you to state on whose land that was plowed. A. It was on mine. I claimed the land at the time, and had a filing on it. I have since acquired a title to the land. I have been in possession of it since about six years ago. During that time I have been in possession of the strip of land between those furrows and the north bank of Stony creek. I have cut hay on it. Q. Now there is a little misunderstanding as to your testimony. Do you mean to be understood to say that the section foreman ever burned off that strip there on the north side of the Stony, on your land? A. Not to my knowledge has it ever been burned off since I lived there. When I stated it had been burned two or three hundred feet from the track, I referred to other places. Q. Now, has the Great Northern, to your knowledge, ever in any way used that strip of land between Stony creek and those furrows for the purpose of a right of way? A. By plowing it. That is all that I know. I fenced that in some time last summer, before the fire, and that

strip of land between the furrows and the creek was included within my inclosure, and it has not been burned off by the company since I went there." It is evident from this testimony that the place where the fire started was within the inclosed land of the witness Gains, and that he was in the possession thereof, claiming title to the same; and, in addition, there is not a particle of evidence tending to show that the defendant has ever done any thing on its part which has any tendency to prove that the right of way is of any particular width at that point. It trespassed upon the land of Mr. Gains in 1894, in running a line of furrows a distance from the track. But, as it is undisputed that its right of way did not extend to the point where it plowed, we are at a loss to determine how, from this evidence, we can fix the line which there marks the boundary of its right of way. All the direct evidence in the case shows that the land where the fire started was private property, and not a part of the right of way. There is no data in this case on which to base an inference that the right of way is of any particular width at this place. The judgment is reversed, and a new trial is ordered. All concur.