## SCHMIDT v. CARPENTER.

Where an amendment to the complaint was not of itself improper, and the action was tried on proper issues without objection at the trial, the error in allowing the amendment because made by the court having no jurisdiction was not prejudicial to defendant.

Assignments on ruling on evidence that the court erred in overruling the objections to questions set out, without stating the grounds of objections or the answers to the questions, and without referring to the page or folio of the abstract, or the record where the questions, objections, or answers may be found, will not be reviewed on appeal.

The overruling of a motion for a directed verdict on the ground that the testimony is insufficient to warrant a verdict against defendant made at the close of all the evidence without any specification of the particulars in which the evidence is insufficient, is not reviewable.

A charge, though not reviewable on appeal, because not excepted to, may be looked to by the court on appeal to ascertain the precise issues submitted to the jury as the foundation of plaintiff's right to recover.

A verdict on conflicting evidence will not be disturbed on appeal.

Where in an action for injuries to a servant caused by the negligence of a coservant, authorized by the employe in charge of the work under the authority of the master to direct the work for the employe when absent, the court's charge that the employe had authority to designate the coservant to act for him in his absence was not excepted to, the sufficiency of the evidence to show that the employe had such authority, challenged on motion for new trial for the insufficiency of the evidence, could not be considered on appeal; the charge being the law of the case.

On motion for new trial for insufficiency of the evidence, the law, as stated in the instructions not excepted to, is the law of the case, and the sufficiency of the evidence can only be tested by such instructions whether they are right or wrong, while, on a motion for a directed verdict with proper specifications as to the insufficiency of the evidence, the correct rule of law must necessarily be applied in testing the sufficiency of the evidence.

(Opinion filed May 31, 1911.)

Appeal from Circuit Court, Beadle County. Hon. LEVI McGEE, Judge.

Action by John Schmidt against J. S. Carpenter. From a judgment for plaintiff, defendant appeals. Affirmed.

SMITH, P. J.   Action to recover damages for personal injuries sustained by plaintiff in the service of defendant, who was a, contractor engaged in the construction of steel bridges.   Plaintiff was employed as a laborer.   While moving a steel beam by hitching a team of horses to one end and dragging it, plaintiff was required to put a chain around an end of the beam, and, as alleged in the complaint, before he could get out of the way, "said team of horses started suddenly with a jump and on the run," resulting in serious injury to plaintiff.   Defendant is charged with negligence in starting the team.   The answer denies negligence, and alleges contributory negligence and risk incident to employment. There are nine assignments of error in the record.

[1] In January, 1909, trial was had in Beadle county circuit court before Judge McGee, presiding in place of Judge Taylor, disqualified, which resulted in a disagreement of the jury.   On April 13, 1909, a notice of application for leave to amend the complaint was served, returnable before "the court" at Rapid City on April 22d, and an affidavit and copy of the proposed amended complaint were served on appellant.   Beadle county, where the action was pending and was tried, is in the Ninth circuit, while Rapid City is in the Seventh circuit.   Defendant appeared specially and objected to the jurisdiction of the court to hear the motion on the ground that Judge McGee had no jurisdiction over the case after he had adjourned the term in Beadle county and returned to his home circuit.   The objection was overruled, and an order permitting the amendment was signed "by the court, Levi McGee, Judge."   The order allowing amendment and service of the amended complaint was made on the 22d of April, 1909.   Issue was joined by answer to the amended complaint, and on the issues thus framed the action was tried and a verdict returned for plaintiff in the sum of $3,000 August 3, 1909.   Nearly four months intervened between the service of the amended complaint and the trial of the action.   No objections were interposed at the trial to the proceedings because of the amended complaint.   If it be assumed that appellant is right in his contention that the order permitting amendment was made without jurisdiction, yet as the

action was tried on proper issues decisive of the rights of the parties, without objection at the trial, we are unable to see in what possible way appellant was or could have been prejudiced in his substantial rights by the order permitting the amendment. It is not contended by appellant that the amendment itself was improper, or that the amended complaint presented issues not material to the substantial rights of the parties. This court has ruled many times that an error which was not and could not have been prejudicial to appellant's substantial rights will not justify a reversal. Various assignments of error relate to rulings on matters of evidence at the trial.

[2] The assignments upon all these rulings are in substantially the following form: "The court erred in overruling defendant's objections to the following questions propounded to plaintiff by his counsel on direct examination." Then follows a series of questions, without any statement of the grounds of objections thereto, and without any statement of the answers to the questions, and without any reference whatever to the page or folio of the abstract or record where the questions, objections, or answers may be found. Such assignments are wholly insufficient to present any question for review upon appeal, and will not be considered by this court. Hedlun v. Holy Terror Mining Co., 16 S. D. 261-281, 92 N. W. 31.

[3] At the close of all the evidence, defendant's counsel made the following motion: "At this time the defendant moves the court to direct the jury to return a verdict in favor of the defendant and against the plaintiff on the ground that the testimony is insufficient to warrant a verdict against the defendant." The motion was denied, and appellant seeks to review this ruling. No specifications of the particulars in which the evidence is alleged to be insufficient is contained in the motion. In Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073, this court said: "Whatever merit there might have been in this point had it been stated in the motion to direct a verdict in the court below, it is not available in this court, for the reason that no such ground was stated in the motion in the trial court. Where such a motion is made, the specific

ground upon which the motion is made must be stated. It is due to the court and the opposing counsel that their attention should be called to the precise defect in the evidence or the omission of evidence that the party claims entitles him to the direction of the verdict. It is due to the court to enable it to pass understandingly upon the motion, and it is due to counsel that he may, if possible, supply the defective or omitted evidence if permitted to do so by the court." Under this settled rule, the question of insufficiency of the evidence of plaintiff which would warrant a direction of a verdict for defendant is not before us for review. Appellant in his motion for a new trial alleges insufficiency of the evidence to justify the verdict in three particulars: First. That Charles Hallen, who was charged with the act of negligence complained of, was a coemploye of plaintiff, and was not foreman, superintendent, or vice principal; second, that the injury complained of arose from a danger incident to the work in which plaintiff was engaged, and which could be seen and appreciated without special or expert knowledge and was as apparent to plaintiff as to defendant or his other employes; third, that there was no evidence tending to show that the injury suffered by plaintiff was due to any negligence on the part of defendant or his authorized superintendent or vice principal. Exception was entered to the order overruling the motion for a new trial, and this ruling is properly assigned as error. Insufficiency of the evidence to sustain the verdict in the particulars pointed out by these specifications would ordinarily be directly presented to the trial court upon such a motion for a new trial. Respondent, however, contends that for reasons hereinafter referred to the sufficiency of the evidence cannot be reviewed upon the record before us. A brief statement of the evidence will aid in a clear understanding of the questions which to us seem decisive of this appeal.

Plaintiff, Schmidt, testified: "That the foreman, Kingery, hired him at Wolsey, and that he began work in September, 1907. That he had been a farmer and had never worked with a bridge crew or gang. That the foreman, Kingery, was gone a good deal of the time, and in his absence Charles Hallen took his place and

"bossed the whole crowd while Kingery was gone." That about October 10, 1907, Hallen and a man by the name of Winecup, who was working with his team for the defendant, together with the plaintiff, went to the town of Virgil to get some steel bridge beams. The foreman, Kingery, was not present and Hallen directed the work. The railroad track at Virgil runs north and south. The steel beams were piled on the west side of the track parallel therewith. By means of double trees and chain the horses were hitched to the north end of a steel beam to draw it out where it could be loaded on a wagon. Winecup drove the team. When they came over after the second or third beam which was lying on the ground, plaintiff tried to pry it up to slip the chain around the north end of it. The team faced the west. Plaintiff was on the east side of the beam between the railroad track and the beam. Hallen directed plaintiff to go over on the west side of the beam and raise it with a bar, which he did, and the chain was slipped over the end of the bar. The place Hallen told plaintiff to stand in was between the beam and the horses. As soon as the chain was around the beam, Hallen said "go on," and the horses jumped out "like a shot," and the beam struck plaintiff in the ankle and knocked him down. The first thing plaintiff heard Hallen say was, "The G—— d—— horses have been spoiled on the pile driver." Plaintiff became unconscious, and did not become conscious again until he was in a bed-room in the hotel, where he remained a month. Plaintiff had never driven the team himself, and did not know that they would start with a jump, had never seen the team do anything of the kind before. Winecup had told him the horses were gentle. At the time the horses started, plaintiff was standing a little more than a foot west of the beam. Hallen directed plaintiff and Winecup to go with him after the steel. Kingery did not give any directions, and was not there that morning. The statements of plaintiff as to what occurred at the time of the accident were corroborated by at least two other eye-witnesses. Hallen, as a witness for defendant, testified: That he was in the employment of defendant in October, 1907, putting in a bridge at Virgil; was employed as a laborer; was acquanited with Kingery and commenced working for him the first part of June. Kingery

was foreman. That he, Hallen, had nothing to do with employing men to work on the bridge or with discharging men. Kingery did not give him any orders whatever to take charge of the work in his absence; remembered the accident the time plaintiff was injured. When they arrived at the bridge that morning, they unloaded the tools and left the pile driver at the bridge; had not received any orders from Kingery with regard to going to Virgil for steel, but knew it was at Virgil. They went after the steel because there was nothing else to do that morning. Kingery generally laid the work out, but did not that morning; tried to keep going, though he was not hired to keep the men at work; did not direct the plaintiff at the time of the accident about using the pry on the beam; and did not direct him to go over on the west side of the beam. · The beams were 30 feet long and 10 inches at the top and weighed about 25 pounds to the foot. When the accident happened, did not say to the horses "go on." Said nothing whatever about the horses being spoiled on the pile driver. The team had been on the work two or three weeks, and had only been used on the pile driver once for about three hours; did not hear any command to the team to start, and supposed Winecup had the lines in his hand. Said nothing at the time to start them, and did not hear Winecup say anything.

Winecup, as a witness on behalf of defendant, testified: That he owned the team and began work about the 7th of October and worked for one week. Mr. Kingery employed him. The team was perfectly safe anywhere. Kingery was not present the morning they did this work. Hallen said they would go over and get a load of steel, and they went. When they got to Virgil that morning, they were dragging the beams out, and, when they came back after that beam, he held the lines in one hand and the end of the chain in the other hand, laid the lines down, and put the chain around the end of the beam and picked up the lines and the horses started; did not know plaintiff was there until he heard him "holler;" pulled right back on the lines and stopped the horses. They picked the beam up off plaintiff's foot; did not remember directions given by Hallen to Schmidt. Hallen went ahead with

the work when Kingery was gone and understood the work more than the rest.

Defendant's deposition was offered in evidence. He testified: He was constructing steel bridges in Beadle county under a contract with the commissioners; knows the bridge his men were at work on at the time of the accident. E. H. Kingery was authorized to employ the men and was foreman in charge of the work; superintended the construction of all his bridges in Beadle county. Defendant was not personally present during the construction of any of these bridges, and did not know of the plaintiff's employment until pay rolls came in for that week. Hallen had been in his employment off and on for five or six years; was personally acquainted with him. He was employed as a member of the gang, and had no supervisory powers whatever, over the other men engaged in the work. He, the defendant, employed Mr. Hallen to work for him. Hallen had never hired or discharged men in connection with his work. Kingery was his representative, and had authority to hire his own men and to discharge them, and nobody else was authorized to do this; never saw Winecup's team of horses and knew nothing about them and no complaint had ever reached him as to their safety or adaptability to the work; usually worked from eight to fifteen crews; was not himself on the work when any of the Beadle county bridges were built; devoted his time to the business of the company other than construction work.

The first and third specifications of insufficiency of evidence upon the motion for a new trial present but one question, namely, Whether Charles Hallen had authority to act as Kingery's representative in the absence of the superintendent, Kingery. Certain evidence in the record tended to show that Hallen was authorized by Kingery to act as foreman, and that Hallen "bossed the whole crowd if Kingery was gone;" that Kingery told the plaintiff that Charley Hallen should take his place when he was gone; and that Kingery was gone "lots of times." The charge of the trial court submitting the issues of fact to the jury was not excepted to and stands unchallenged in the record.

[4] The charge therefore is not before us for review, but may be looked to upon this appeal to ascertain the precise questions or

issues of fact submitted to the jury as the foundation of plaintiff's right to recover for the alleged injury. The charge of the court bearing upon the question of negligence is that "if the said Hallen * * * ordered the plaintiff into a dangerous position, and the said Hallen, knowing the same to be a dangerous position, and the plaintiff, acting under such order and in obedience thereto and not knowing the same to be a dangerous position, took up or entered into such dangerous position, and while he was in such dangerous position the said Hallen ordered the team to be started up or put in motion, and the team was then suddenly put in motion pursuant to such order and before the plaintiff could get out of or escape from such dangerous position, and as a natural and proximate result of the team being so started up or put in motion while the plaintiff was in such dangerous position and before he could get out of the same the plaintiff is injured, then he was entitled to recover herein. If, however, the injury was caused by the starting of the team by Winecup, the driver, without an order from Hallen before the plaintiff had an opportunity to retire from the dangerous position he was in, then such injury was due to the negligence of Winecup, the driver, and defendant is not liable." Under this charge, specific issues of fact were presented for determination by the jury, one of which was whether Hallen ordered the team to be put in motion or whether the driver, Winecup, started the team without an order from Hallen. The evidence upon this issue was conflicting; the plaintiff testifying that Hallen ordered the team to "go on," while the testimony of Winecup the driver and Hallen is to the contrary. The verdict of the jury, however, settled this issue in plaintiff's favor. The verdict is also decisive of the facts, that Kingery authorized Hallen to act in his, Kingery's place, in his absence; that the place where plaintiff was injured was a dangerous one; that Hallen knew it was dangerous; that plaintiff did not know it was dangerous; that Hallen ordered plaintiff into such dangerous position, and plaintiff acted pursuant to such order; that the team was started by Hallen's order before plaintiff could escape from the dangerous position; and that plaintiff's injuries were the natural and proximate result of the negligent and careless starting of the team.

[5] On the question of negligence as shown by the facts thus summarized the evidence of the plaintiff's witnesses and that of the defendant's witnesses is more or less conflicting, and the verdict of the jury cannot be disturbed by this court. The chief contention on this appeal, however, is that the evidence is not sufficient to show that Kingery's authority was such as he could delegate to Hallen as representative of the defendant Carpenter.

[6] Respondent insists that appellant is not in position on the record before this court to raise this question, and we think respondent is right in his contention. The court charged the jury: "If the acknowledged representative of the defendant in this case * * * directed the plaintiff and his colaborers to recognize Hallen in his absence, as his representative and their boss and obey his orders, and the said Hallen in the absence of said representative ordered the plaintiff into the dangerous position," etc. The acknowledged representative of the defendant in this case was Kingery. Defendant himself testified that Kingery was his representative and had full charge and control of construction work on all steel bridges—several in number—erected in Beadle county, under his contract with the commissioners of that county, and had full and exclusive authority to hire and discharge all employes and to direct and control their work and assign them their respective duties. By these instructions the court in unmistakable language withdrew from the jury any question of fact as to whether Carpenter had authorized Kingery to select Hallen as his representative in his absence, and instructed the jury as a matter of law that upon the undisputed evidence of Carptenter himself Kingery was authorized by Carptenter to designate Hallen to act for him. This instruction not excepted to, became and is the law of the case, and is controlling even where the sufficiency of the evidence to sustain the verdict is challenged upon motion for a new trial with specifications as to the insufficiency of evidence. In Lighthouse v. C., M. & St. P. Ry. Co., 3 S. D. 518, 54 N. W. 320, this court laid down the rule that, where "no exception is taken by either side to the charge of the court, it must for the purposes of this case be taken as the law." And in Malloy v. C., M. & St. P. Ry. Co., 25 S. D. 503, 127 N. W. 633, this court reaffirms the

rule there stated in the following language: "But the court in its instructions to the jury which instructions do not appear to have been excepted to by either party laid down·the law in this case, and which law must stand as the law upon this appeal, making it unnecessary for us to consider the many authorities cited by the parties hereto;and by such instructions the court practically directed the jury to find a verdict for the defense unless," etc. This rule is recognized by the decisions of numerous courts. McMillen v. Aitchison, 3 N. D. 183, 54 N. W. 1030; Bellows v. Litchfield, 83 Iowa, 36, 48 N. W. 1062; Crane v. Railway Co., 74 Iowa, 330-334, 37 N. W. 397, 7 Am. St. Rep. 479; Dutton v. Ry. Co., 66 Iowa, 252, 23 N. W. 739; Alexander v. Bilger, 89 N. W. 98; Union P. Ry. Co. v. James, 56 Fed. 1001, 6 C. C. A. 217; Peet v C., ·M. & St. P. Ry. Co., 88 Iowa, 520, 55 N. W. 508. And this rule is applicable where the sufficiency of the evidence is sought to be challenged upon the ground of insufficiency, upon a motion for a new trial. In Smith v. Pearson, 44 Minn. 397, 46 N. W. 849, the court says: "The verdict was for the plaintiff, and the principal question presented by this appeal is whether the trial court erred in denying a motion for a new trial on the ground that the verdict was not justified by the evidence and contrary to law. * * * This question is not open to the defendant on this record. The trial judge instructed the jury that 'the plaintiff, as is conceded on all sides, made a loan to the lumber company and took as security a bill of sale of certain lumber * * * and filed his bill of sale as the evidence shows in the clerk's office. Now, that makes a good prima facie case that he is entitled to recover.' The court then proceeded to instruct the jury that, to defeat or overcome this prima facie case, it was incumbent on defendant to prove that the transaction was a collusive one to enable the bank to secure a preference over other creditors, the plaintiff having reasonable cause for believing that the lumber company was insolvent.' The charge was in substance and effect an instruction to 'the jury that the filing of the bill of sale was authorized and effectual as notice. To this instruction the defendant took no exception. The jury were bound to accept the law as given to them by the court, and by not execpting to the charge the defendant consented that

the weight and sufficiency of the evidence, and the issues in the case should be determined by the jury in accordance with the law as given by the court; and, whether the charge was right or wrong, it must, for the purposes of this appeal, be taken as the law of this case, and whether the verdict was against the evidence and contrary to law must be determined by the application of the rules of law as laid down in the charge." Coal Co. v. Knott, 115 Ill. App. 515. It seems plain, therefore, that the charge of the court to the effect that Kingery was the representative of the defendant, and, if Kingery did delegate his authority to Hallen, such delegation was binding upon defendant Carpenter, together with the finding of the jury that Kingery did in fact delegate such authority to Hallen, are final and conclusive upon this appeal.

[7] Appellant in his brief contends that the motion for direction of verdict upon the ground of insufficiency of the evidence and the motion for a new trial upon the ground of insufficiency of the evidence to sustain the verdict necessarily present the same proposition. However, this is not correct. On a motion for direction of a verdict with proper specifications as to insufficiency of the evidence, the correct rule of law must necessarily be applied in testing the sufficiency of the evidence; but upon a motion for new trial upon the ground of insufficiency of evidence to sustain the verdict the law as laid down by the court in its instructions not excepted to, whether they state the rule of law correctly or incorrectly, become the law of the case, and the sufficiency of the evidence can only be tested by the rule in the instructions. The conclusions arrived at necessarily dispose of appellant's further contention that the negligence complained of and which occasioned plaintiff's injuries was the negligence of a coemploye, and that the danger was incident to the employment, and was assumed by plaintiff. We have carefully examined the entire record, and find no reversible error therein.

The judgment and order of the trial court are therefore affirmed.